Morphy, J.
On the 10th of February, 1840, the petitioner became the purchaser, at a sheriff’s sale, of one undivided sixth part of a sugar plantation and fifty-five slaves, belonging to James Puech, in the parish of Plaquemines, for the sum of $3600, at a credit of twelve months. The property thus adjudicated to him was subject to two general mortgages resulting from a judgment in favor of John Slidell, and one in favor of the successions 0f Mr. and Mrs. Daquin. The Sheriff left in the hands of the purchaser $3270, which was the amount of a special mortgage held by the Union Bank, and received the balance. Shortly after the sale, the purchaser was threatened with eviction by Slidell, under his judicial mortgage, and by the children and heirs of the late wife of James Puech, under their legal mortgage against their father and tutor. He informed the Union Bank that, under such circumstances, he did not intend to pay the portion of the price which had been left in his hands, whereupon the Bank brought suit against Puech under their mortgage, to which his late wife, Althée Josephine Daquin, had been a party bound with him in solido, and recovered a judgment for $2165, with interest at the rate of ten per cent per annum from the 1st of March, 1837. On this judgment the Bank sued out an execution; and under the clause de non alienando included in their mortgage, levied it on the undivided sixth of the plantation and slaves in the possession of the plaintiff. At the second exposure of this property for sale, on the 19th of July, 1841, it was struck off to the plaintiff for the sum of $6000, payable at twelve months, with interest at ten per cent per annum from that day. After paying the Bank principal, interest and costs, there remained in the hands of the purchaser a balance of $2142 65 due, with interest at ten per cent from the 19th of July, 1841, until paid. The present suit was brought by the purchaser, in which he avers, that the balance remaining due on the price of his purchase is insufficient to discharge either of the two general mort *400 gages existing on the property; that he is bound for nothing beyond the price of his adjudication ; and that on his paying that price, he has the right of having the property cleared of all subsequent or inferior mortgages or liens. He prays that J. Slidell, James Puech, the natural tutor of his children, and Louis Pilié, their under-tutor, may be cited to come and establish their respective rights to the aforesaid balance of $2142 65, and to show cause why, upon paying or depositing such balance subject to the order of the court, their respective mortgages should not be can-celled, so far as they affect the property bought by him. Slidell answered, denying the validity of the sale whereby the plaintiff is alleged to have become the purchaser of the property, and averring that by nothing done in the suit of the Union Bank against Puech, has his mortgage, resulting from the registry of his judgment, been in any way affected or impaired. He further avers that, by virtue of the Sheriff’s deed to the plaintiff, of the ISth of February, 1840, and the agreements and undertakings of the latter, he has become and is personally responsible to him for the full amount of his judicial mortgage, to wit, $4855 62, and he accordingly prays for a judgment in reconvention against the plaintiff; but, should the sale made at the suit of the Union Bank be held good and valid, and if the sum proposed to be deposited is to be distributed among the mortgage creditors subsequent to the Bank, he then prays that it may be awarded to him, as.his rights are superior to those of his co-defendants, which rights he denies, and of which he requires strict proof. James Puech, as natural tutor of his children, and Louis Pilié, as their under-tutor, answered, that as the beneficiary heirs of their mother, Althée Josephine, who died in June, 1835, the said minors are entitled to claim of James Puech, their father, the sum of $4000, brought by her in marriage in January, 1827, and one-half of the community of gains and acquets which existed between their father and mother at the death of the latter, which half is supposed to be at least $20,000, though its true amount cannot be positively known, as the said estate and community were never regularly settled ; that among the property owned by James Puech, at the time of his wife’s death, was the undivided sixth part of the plantation and slaves now owned by the plains *401 .tiff; that under an order of the Court of Probates of the parish of Orleans, the property was, in June, 1836, offered for sale and adjudicated to John D. Bein, but for the account of James Puech, for $15,666 66, no part of which price was ever paid by Puech, and one-half of which belonged to his minor children, being the proceeds of community property; and that for this amount, as well as for that of $4000, their mother’s dowry, they had a legal mortgage on all their father’s property. These defendants aver, that the property in question is subject to the general mortgages which existed on it before the last sale to the plaintiff, in the same manner as if such sale had not takan place. They object to the legality of the course pursued in the premises, and deny the plaintiff’s right of thus forcing upon them an issue with their co-defendant, J. Slidell. They pray, that this suit may be dismissed and their hypothecary action reserved to them ; but should it be incumbent on them to justify and enforce the mortgage of the minor children of Mrs. Puech, then Louis Pilié, as their under-tutor, acting in their behalf on account of the opposition of their interests to those of their tutor, avers that he has demanded payment of the sums due to them as aforesaid, more than thirty days ago, from the said Puech. and that they are still unpaid. He prays, that the property described in the petition may be seized and sold to satisfy their claim, as their mortgage is anterior to that of J. Slidell. The Judge below dismissed this suit, being of opinion that the plaintiff wrongfully refused lo pay the amount due to the Union Bank, which had been left in his hands on the 10th of February, 1840, and that by suffering the Union Bank to seize and sell the property under their mortgage, he had not bettered his situation in relation io the general mortgage held by the defendants. The plaintiff has appealed.
The balance of $3270, which the Sheriff left in the hands of the plaintiff, was a part of the price for which the property had •been struck off to him. When he discovered that he was in danger of being evicted by the defendants, who held general mortgages on it, he was authorized, under art. 710 of the Code of Practice, to withhold the payment of the price until proper security was tendered to him. The evidence shows, that both of the defendants threatened the purchaser with a suit, and that one of *402 them, X Slidell, actually instituted proceedings against him. He Avas not, therefore, acting in his own wrong Avhen he retained the price, and left the Bank to their legal remedy. In the sale which the Sheriff executed to the plaintiff in February, 1840, that officer, in compliance with art. 693, § 6, of the Code of Practice, made mention of Slidell’s mortgage; but stated further, that the property was sold subject to such mortgage. It is on this mention or declaration of the Sheriff, that J. Slidell has averred that the plaintiff had become personally bound to him for the amount of his judgment; but it is clear that, by this mention or declaration, that officer must be presumed to have meant nothing more than to execute his deed according to larv. He had no authority of his own to impose any burden on the purchaser, beyond the provisions of the law under which he acted. By these provisions, purchasers at sales made under executions are not personally bound for anterior general mortgages existing on property they may purchase. They are only liable to an hypothecary action. If such action be actually brought, or if they have a just fear of its being brought, they have a right to retain the price of the adjudication, or any part of it not yet paid, until the disturbance ceases, or they are properly secured against eviction. The mention, therefore, made by the Sheriff in his deed, that the property was sold subject to Slidell’s mortgage, did not in fact', and could not in any way, increase the legal obligations of the plaintiff. Code of Pract. arts. 679, 683, 693, 710. When the property, then, was seized and sold, at the suit of the Union Bank, the plaintiff was evicted of the title he had acquired under the former Sheriff’s sale of the 10ih of February, 1840, and that sale became null and void, and was no longer binding on him.
We now come to the question presented by the second sale of the same property, made by the Sheriff of the parish of Plaque-mines. What Avas the plaintiff to do with the balance of $2142 65, remaining in his hands, of the price of the adjudication, after paying the debt of the Union Bank ? The purchaser is bound for nothing beyond the price of his adjudication, says article 708 of the Code of Practice. Had that price been inadequate to discharge the claim of the Bank, or barely sufficient to pay it, there could have been no difficulty, for the article just quoted provides *403 that, in such a case, the Sheriff shall give the purchaser a release from the mortgages subsequent or inferior to that of the suing creditor; but the Code no-where provides for the mode of raising such encumbrances, when there remains a surplus after paying the suing creditor who had a special mortgage preferable, or anterior to them. Art. 707 of the Code of Practice provides that if, after paying the suing creditor, there be a surplus, the purchaser shall apply it to the payment of the special mortgages existing on the property, subsequent to that of the suing creditor. In the present case, there exists no special mortgage subsequent to that of the Bank, but there are two general mortgages, both subsequent or inferior to it. To whom, then, was this surplus to be paid, in order to exonerate the purchaser, and to clear the property from its encumbrances ? It can hardly be pretended that in such a case the money should be paid to the debtor, leaving the purchaser exposed to be evicted by the subsequent mortgage creditors of that very debtor, who would thus have been permitted to pocket the money arising from the sale of their pledge. It is not, on the other hand, .the province of the purchaser, nor can he safely take upon himself to decide to which of the two general mortgages the balance in his hand is to be applied. The purchaser being bound for nothing beyond the price of his adjudication, has surely, on paying that price, the right of having the property cleared of all encumbrances subsequent to that of the suing creditor. The course pursued by the plaintiff to assert and enfore this right presents, in our opinion, a safe and proper rule of proceeding for a case like the present. It arises ex necessitate rei, and we cannot see any good reason why, in the absence of any law to the contrary, it should not be adopted and sanctioned by us.
Our attention has been called to the circumstance, that the Sheriff’s sale to the plaintiff, of the 19th of July, 1841, which is for the plantation and fifty-five slaves, recites the names of only sixteen out of twenty-five slaves mortgaged to the Union Bank in March, 1833. It is clear that the thirty-nine other slaves included in the Sheriff’s deed, and on which the Bank had no mortgage, have continued in the hands of the plaintiff, to be subject to the general mortgages of the defendants, as in relation to these *404 slaves, their mortgages were not subsequent to that of the suing creditor. Code of Pract. arts. 708-710.
The judgmentof J. Slidell for $4855 62, was recorded in the parish of Plaquemines, on the 30th of April, 1839, and is not disputed ; but the rights of the minors Puech have been denied by their co-defendant, and they have been called upon to prove them strictly. The sum of $4000, which they claim for the dowry ot their mother, is fully proved to have been received by James Puech in 1827. Although the marriage contract of their mother was never recorded in the parish of Plaquemines, she had by law a legal mortgage on all the property of her husband, which took effect in 1827. Civ. Code, art. 3298. Her heirs have, therefore, a mortgage superior to that of J. Slidell, for $4000, with legal interest from the 1st of June, 1835, the date of the dissolution of the community, and are entitled to receive the balance in the, hands of the plaintiff. Civ. Code, art. 2353. 7 La. 292.
In relation to their claim on account of the community of gains and acquets which existed between their father and mother, it is not shown that the community had made any acquets or gains ; this can properly appear only on the liquidation of the community, and it is admitted that none was ever made. This court has held, that the wife or her representatives, although their distinct interest in the community attaches at the dissolution of the marriage, subject to their right to renounce and be exonerated from the payment of the community debts, have nothing to claim out of the\acquéts and gains, until such debts are paid. 17 La. 238. 1 Rob. 378. In the conjugal, as well as in every other partnership, the party claiming a share in it can recover only on what remains after all debts due to third persons have been settled; The record shows that, with a view to such a settlement and 1L quidation, a sale of certain property in the parish of Plaquemines was made, in 1836, at the instance of J. Puech ; but whether the proceeds sufficed to pay the debts of the community, or what surplus was left, or whether there was other common property, does not appear, as the proceedings then begun iu the Court of Probates were never carried further. We attach little or no importance to the declaration of a witness who testified that, in 1835, Puech had ho debts. He does not inform us by what *405 means he acquired this positive knowledge of a negative. Such testimony cannot satisfy us that the community owed no debts whatever, and that we must allow to these minors one-half of the proceeds of the property sold in 1836, as their share of the acquets and gains. In a suit against their father, they could have asked only for a settlement of the community, and for their share of such balance as might remain after the payment of its debts, cere alieno deducto. How then can it be pretended that, as against third persons, they can claim to be creditors of their father, for one-half of the price of any specific piece of property that may have been acquired during the marriage, when they do not show by a liquidation of the community, that there are any gains to be divided? This is more particularly the case when the representatives of the wife are beneficiary heirs, who, under our laws, are entitled only to the residue of the estate after the payment of all its debts. Civ. Code, art. 1051.
As the rights of the defendants have been established contradictorily with the plaintiff and with each other, we have been requested to allow them the right of seizing and selling in this suit the undivided sixth part of the thirty-nine slaves, yet subject to their general mortgage, without the necessity of resorting to other proceedings to enforce it. To this course the plaintiff does not object; but as he wili be thereby evicted of his purchase of one-sixth of these thirty-nine slaves, he asks, and justice requires, that he should be allowed to retain out of the balance in his hands, the amount which the sixth part of the thirty-nine slaves brought in the price of $6000, at which the sixth part of the plantation and all the slaves were adjudicated to him. This right we think he has under article 710 of the Code 'of Practice.
It is, therefore, ordered, that the judgment of the District Court be reversed ; and it is further ordered that, on the plaintiff’s pay^ ing to the minors Puech, the balance of $2142 65, with ten per cent interest per annum, from the 19th July, 1841, (after deducting therefrom the amount which the sixth part of the thirty-nine slaves above mentioned brought in the $6000, the price of the sixth part of the whole estate, and also the costs of this suit,) the general mortgages of the minors Puech, and of J. Slidell, be raised and cancelled, so far as the plantation and slaves described in *406 the mortgage to the Union Bank of the 30th of March, 1833, are thereby affected ; the amount to be deducted as aforesaid, to be determined by experts to be appointed by the District Court, on the application of either of the parties. It is further ordered, that either of the defendants may take out an order of seizure and sale against the undivided sixth part of the thirty-nine slaves in question, provided the proceeds be apportioned among them, according to the amount and rank of their mortgages as above settled. And it is further ordered, that the costs of both courts be paid out of the balance in the hands of the plaintiff, as herein before mentioned.