Hart and others, Heirs, *v.* Foley.

MARTHA HART and others, Heirs, *v.* ARTHUR M. FOLEY.

The plaintiff in a petitory action, must show a good and legal title in himself.

A defendant, sought to be evicted by a petitory action, may urge, by way of exception to the title of plaintiff, any thing that he could plead in a direct action of nullity.

Though the interest of the wife, or of her representatives, in the property of the community, attaches at the dissolution of the marriage, subject to their right of renouncing and of being exonerated from the payment of the community debts, they can claim nothing of the *acquêts et gains* until the debts of the community are paid.

An adjudication to the surviving partner, of the whole of the community property encumbered with its debts, is void; no such adjudication can be made before a liquidation of the community, showing the real amount of the *acquêts et gains*, and of the property owned in common.

The community is dissolved by the death of one of the spouses; and the survivor and the heirs of the deceased, are each seized of one undivided moiety of the property, subject to the payment of the debts.

A creditor who wishes to hold the heirs of the wife responsible for a community debt, must join them in his suit against the husband, for the latter no longer represents the community.

Prescription cannot avail one not in possession.

Defendant being in possession, no prescription can bar his right to contest the validity of the title under which the plaintiff claims.

Where property brings less than the amount of the mortgage of the creditor at whose suit it is sold, all subsequent mortgages fall to the ground, and the sheriff is authorized to eraze them.

THE plaintiffs are appellants from a judgment of the District Court of Assumption, *Deblieux*, J., in favor of the defendant, quieting him in the possession of the land in dispute.

*Beatty*, for the appellants.

*Miles Taylor*, for the defendant.

MORPHY, J.    The petitioners seek to recover a tract of land, adjudicated to their father, Robert Thompson, at a sheriff's sale, made at his own suit, as a judgment creditor of one André Candolle.    The material facts of the case, as disclosed by the record, are, that on the 1st of August, 1822, Antoine Barras and André Candolle made their promissory note for $2130, by which they bound themselves jointly and severally to pay said sum in all the month of March, 1823, to the order of one Louis Riché, by whom it was endorsed over to Thompson, before the maturity of this obligation, on the 21st of October, 1822.    The community which had

Hart and others, Heirs, *v.* Foley.

existed between Candolle and Anne Le Gros, his wife, was dissolved by the death of the latter, on the 12th of October, 1823. All the community property, consisting of several tracts of land, besides the one in dispute, thirty eight slaves, a considerable quantity of moveables, and credits to a large amount, was adjudicated to Candolle, at the appraised value or price of the inventory, to wit, the sum of $59,808. Barras and Candolle having failed to pay their note, Thompson obtained a judgment *in solido* against them on the 26th of November, 1823. Under this judgment, a *fieri facias* was issued, and levied on the tract now claimed, which had become the exclusive property of Candolle, under the adjudication previously made to him by a decree of the Court of Probates of the parish of Assumption. The property was sold, at twelve month's credit, to one Joseph Menard, who having failed to pay his bond, the land was again offered for sale, and finally adjudicated to the seizing creditor, Thompson, for $55, on the 17th of April, 1826. Notwithstanding this sale, and the one previously made to Menard, it appears that Candolle was suffered to remain in the quiet and undisturbed possession of the property up to the year 1829, when under a judgment obtained against him by his children for $26,153 75, as their share of the *acquêts et gains*, the property was seized and sold to Joesph Menard, who remained also in the peaceable possession of the premises until the death of his wife. At the succession sale of the estate of Menard's wife, the land was publicly adjudicated to the present defendant for $7000, on the 22d of February, 1836, and this action was instituted on the 20th of September, 1837.

Under this state of facts, it is contended on the part of the defendant and appellee, that under article 684 of the Code of Practice, and the settled jurisprudence of this court, no adjudication could be, or was in fact made to Thompson on the 17th of April, 1826, because no bid was offered to the amount of the special mortgage in favor of the heirs of Anne Le Gros, existing on the land by virtue of the adjudication made to Candolle of the community property, and under the judgment reducing such mortgage to $26,153 75. Civ. Code, art. 338. 3 Martin, N. S., 604. 4 Ib., 162.

On the part of the appellant, it is urged:

1. That admitting the plaintiffs' title to be illegal and defective,

the defendant cannot avail himself of that nullity in this action, but must bring a direct action of nullity to have it avoided.

2. That the pretended special mortgage which is said to have existed and to have prevented the sale, was a mortgage of less dignity than the lien of the plaintiff in execution, his claim being one against the community which had existed between Candolle and his deceased wife, while this mortgage was for a claim of the heirs of the wife for her half of the community property, which could only have effect, after the debts of the community were paid out of the property, that being the common pledge of all the creditors of the community.

3. That prescription has cured the nullities or defects of the title of the petitioners, if any ever existed.

4. That if the sale to Thompson be set aside as null, his judicial mortgage which has since lain in abeyance should be declared to be reinstated, and the property sold to satisfy the same.

I. The rule is that in a petitory action the plaintiff is bound to show title in himself; this, we apprehend, means that he must show a good and legal one. If that which he exhibits is defective, and contains absolute nullities, apparent on the face of it, the defendant in possession can surely avail himself of such nullities. So long as he is left undisturbed, he has no interest in bringing an action to annul a title which may never be set up or opposed to him, but whenever, under such adverse title, he is sought to be evicted, he can urge against it, by way of exception, any thing that he could plead in a direct action of nullity. ·

II. Were this a controversy between the heirs of Candolle's wife, and the petitioners, as creditors of the community, to render the community property subject to their claim before its partition or adjudication, under art. 338 of the Civil Code, it would wear a very different aspect from that which it presents when a third · party is concerned. In *Lawson et ux.* v. *Ripley*, 17 La. 238, we have said, that the wife, or her representatives, although their distinct interest in the community attaches at the dissolution of the marriage, subject to their right to renounce and be exonerated from the payment of the community debts, have nothing to claim out of the *acquêts et gains*, until such debts are paid. It seems to us extremely improbable that the code ever contemplated that the

whole amount of the community property, however incumbered with debts, could be adjudicated to the surviving father or mother; and the difficulty which now engages our attention, shows the impropriety of such an adjudication, before a liquidation of the community is made, showing what are the *acquêts et gains*, and the property really owned in common between the children and the surviving father or mother. As our laws, however, have provided no mode to compel a regular settlement of a community dissolved by the death of the wife, it behooves the creditors of the community to interfere for the protection of their own rights. After the death of one of the spouses, the community, in a legal sense of the word, is terminated; each party is seized of one undivided half of the property, subject to the payment of the debts. The creditor who wishes to hold the heirs of the wife responsible for a community debt, must join them in his suit against the husband, for the latter no longer represents the community which is at an end. In the present case, Thompson sued Candolle alone; the judgment he obtained could not be opposed to the children, or affect their special mortgage previously recorded; as to them it was a debt personal to their father. Had he sued the children and obtained a judgment against them, as for a debt of the community, he might perhaps have successfully attacked the adjudication, or at least he might have seized their mortgage claim in the hands of Candolle. But Thompson having looked to Candolle alone, and his heirs claiming now under the latter as the sole owner of the property which they say was transferred to them by the sheriff's sale, they cannot be allowed, in the present suit, to question the validity of the proceedings in the Court of Probates, under which Candolle acquired his minor childrens' share in the property in dispute. One of the principal and legal consequences of this adjudication, was to create a special mortgage on the property in favor of his children. This mortgage existed before the rendition of the judgment obtained by Thompson against their father individually. The defendant, who was a third party,. was not bound to know the origin of the debt for which Thompson obtained a judgment against Candolle, more than one year after the death of his wife. Finding this judgment recorded after the mortgage of the children, the defendant must have considered the sheriff's sale to Thompson

as a mere nullity, and in this opinion he must have been confirmed by the course pursued by Thompson himself, notwithstanding the adjudication made to him of this property. He suffered Candolle to remain in possession of it, and afterwards saw the property advertised twice for sale, and pass successively into the hands of Joseph Menard and the defendant, without raising any claim to the property. Under such circumstances it appears to us that the petitioners should not be allowed to disturb the defendant, who is a purchaser in good faith.

III. As to the plea of prescription against the nullities which may exist in the title on which the plaintiffs claim. Admitting that the nullity which is shown to exist in this title could be cured by prescription, of which we entertain strong doubts, it appears to us that it cannot avail a party not in possession. The defendant on the contrary, being the possessor, no prescription can bar his right to contest the validity of the sheriff's sale, under which the plaintiffs claim.

IV. We cannot decree the reinstatement of Thompson's judicial mortgage on the property in dispute, on the very ground which induced us to consider his title as a nullity, to wit, the existence of the special mortgage of $26,153. When the property was sold at the suit of Candolle's children, and bought by Menard for a sum less than the amount of their mortgage, all subsequent mortgages fell to the ground, and the sheriff was authorized to release them. Code Prac. 708.

*Judgment affirmed.*