## No. 9961.

## KATE McCAFFREY vs. JOHN H. BENSON.

A married woman, whose husband has left her, and has disappeared, and after several years is reported dead, and who believes that her said husband is dead, will be held to have been in good faith, in contracting a second marriage, although such marriage was subsequently declared judicially to have been null, ror reason of her want of legal capacity to contract matrimony.

When both parties to a marriage declared null are shown to have been in good faith, such marriage will have its civil effects as relates to the parties, and among such effects will be included the legal community partnership of acquests and gains which results according to law from a legal marriage.

The community will be dissolved by the judgment which declares the nulity of the marriage; and its liquidation must be effected as would be the case with a community dissolved by the death of one of the spouses.

In such a case the property purchased by the husband from the time of the putative marriage, and remaining in his ownership at the date of the declared nullity of the marriage will be treated as belonging to the community.

But being the head and master of the community, the husband owes no account of the proceeds of any community property which he may have sold or otherwise disposed of, or for rents and revenues realized by him from property belonging to the community, during the existence thereof.

An action by a woman for her share in a community alleged to result from a lawful marriage will not sustain the plea of *res adjudicata* to an action by the same person against the same defendant, for the settlement of a community alleged to have resulted from a marriage declared null, between the parties. The cause of action is not the same in the two suits.

A PPEAL from the Civil District Court for the Parish of Orleans ;
    *Tissot*, J.

*J. O. Nixon, Jr.*, for Plaintiff and·Appellee.

*Louis F. Bouchereau* and *J. Duvigneaud* for Defendant and Appellant :

1. The exception that the petition disclosed no right of action. because plaintiff was guilty of bigamy, and the judgment maintaining such exception and dismissing plaintiff's suit, is *res adjudicata* between the parties as to all matters contained in the petition. C. C. 2286, 2287, 1 Ann. 47; 19 La. 328 ; 3 Ann. 446 ; 12 Ann. 197; 23 Ann. 619; 14 La. 59.

2. It matters not under what form, whether by petition, exception, rule or intervention, the question be presented, whenever the same question recurs between the same parties, even under a different form of procedure, the exception of *res adjudicata* estops. 35 Ann. 553; 17 La. 92 ; 4 Ann. 231 ; 36 Ann. 398 ; Poth oblig. p. 518 §899.

3. The silence of the judgment on any demand which was an issue in the case under the pleadings must be considered as an absolute rejection of the demand. 3 M. 142; 7 N. S. 437 ; 32 Ann. 581 and 36 Ann. 398.

4. After issue joined, amendments which alter the substance of the demand by making it different from the one originally brought will not be permitted.

5. One will not be permitted to prove that which he has not alleged. 22 Ann. 479.

6. Where marriage is null and void no community can ever exist between the parties to it. 15 Ann. 519.

7. Judgment for a debt on account of theft will. between the parties, be evidence to prove not only *rem ipsam* but the theft. 4 La. 58. So also, judgment on an exception of no right of action on account of bigamy, opposed to a demand for a separation from bed and board and liquidation and settlement of the community, will be evidence to prove, between the parties, not only *rem ipsam* but the bigamy.

8. Plaintiff must make her case legally certain ; to make it probable is not enough. 15 Ann. 268 ; 18 Ann. 29, 116 ; 19 Ann. 121 and 22 Ann. 378.

9. The court being in possession of all the facts and testimony necessary to enable it to pronounce definitively upon all the issues raised by the pleadings, can render such a judgment as should have been rendered by the district court. C. P. 905.

The opinion of the Court was delivered by

POCHÉ, J.   By the judgment of this court, in the case entitled Mc-Caffrey vs. Benson, reported in the 38th Ann. p. 198, a marriage previously contracted between the parties to this litigation, was declared a nullity on the ground that plaintiff was incapacitated from contracting a lawful marriage at the time that she attempted to marry the defendant Benson.

Her object in the present suit is to judicially enforce the civil effects alleged to have resulted from said marriage, under the provisions of Articles 117 and 118 of the Civil Code, which are in the following words :

117. "The marriage, which has been ·declared null, produces never-

theless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."

118. "If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."

Plaintiff alleges that the marriage between the defendant and herself was contracted in good faith by both parties, and that one of the civil effects which it produced was a community of aquets and gains, in legal consequence of which she is joint owner with the defendant, in equal portions, of all the property acquired by him during the term of their cohabitation together; which extended from the year 1859, to the month of March, 1886, at which time their said marriage was declared null by the judgment of this court.

She therefore prayed to be recognized as the owner of one half of three pieces of immovable property and of some movable property, such as furniture, and forty shares of insurance stock; she also prayed for a moneyed judgment for her share of the rents and revenues of the immovable property from the year 1884, when she was cast out by the defendant, until she acquires possession of her share of said immovable property, and for one-half of the contents of a grocery store which the defendant sold out in 1884, and "for whatever sum may be found to be due upon the final liquidation of the said community or partnership."

Defendant appeals from a judgment in favor of plaintiff, recognizing her as owner of one-half of the immovable property described in her petition and of the forty shares of insurance stock, condemning defendant in a moneyed judgment, for one-half of the rents of the grocery store and of the furniture, in the sum of $1289, and condemning him further to pay to plaintiff $36 per month from December 31, 1886, as long as he remains in possession of her share of the immovable property.

The first contention urged by defendant was the plea of *res judicata*, predicated on the judgment of this court in the case of the 38th Annual herein above referred to.

As in that case plaintiff's demand was for separation from bed and board, and for one-half of the property belonging to the community existing between her alleged husband and herself; and as her entire demand was rejected by our judgment, defendant argues that said judgment is a complete bar to plaintiff's present action which sets up the same demand, for the same cause of action, between the same parties in the same capacity. Two of the essential requisits to the

plea are to be found in the case; but the third is wanting, hence the exception is not good.

In the previous suit the claim for the community was grounded on an alleged lawful marriage, and in the present action the community rights sought to be enforced spring. as alleged civil effects, from a marriage which has been declared null, but which had been contracted in good faith. It is therefore clear that the cause of action is not identical in the two suits; and that the district judge did not err in overruling the plea.

In the case of Cochran vs. Violet, 38 Ann. 525, this court held that: "A final judgment rejecting, on the ground of prescription of four years, an action by a minor against his tutor for acts of the tutorship, cannot sustain the plea of *res judicata* to a subsequent action between the same parties for an account of the usufruct by the surviving parent of the property of his child, after the termination of the usufruct."

As here, the actions there, were between the same parties, for the same funds or amounts of money, but the causes of action are not the same.

Defendant's counsel next call our attention to an alleged erroneous ruling of the district judge, in allowing a supplemental petition, which they contend, altered the nature of the original demand. In her original petition, plaintiff, in enumerating the immovable property which belonged to the community, described a certain house and lot, which, she subsequently discovered, did not stand in the name of the defendant Benson, but in the name of "John H. Pierson."

The object of the supplemental petition was to allege that the placing of that piece of property in the name of "John H. Pierson" was a simulation, the property was truly and really owned by the defendant Benson. Such an allegation did not change the issue as originally tendered in her first petition; the gist of which was that the property formed part of the alleged community heretofore existing between the parties. The supplemental petition merely contained allegations which amplified the tendered issue, which could be covered by the one and the same judgment, as it was actually done in the judgment now on appeal. A simulation has no material existence, and need not be formally or judicially declared.

An adjudication, holding the reverse of a simulated appearance, disposes of the simulation, without any reference thereto in terms. We find no error in the judge's ruling.

The pivotal point in the case, on the merits, is the alleged good faith

with which the putative marriage between these parties was contract-
ed. And in considering that issue, courts must be guided by the rule
that good faith must be presumed, that the presumption yields only to
positive proof of the contrary. Hence, in this case, the burden of
evidence is on the defendant to rebut that presumption, in so far as
plaintiff is concerned. Marcadé, vol. 1, p. 524, §695; succession of
Taylor, 39 Ann. 823.

The record shows that plaintiff was legally married in 1848, to one
Christopher Anthony, who left her in 1851, and who disappeared in
1856.

In 1859, plaintiff, having been informed and believing that Anthony
was dead, contracted marriage with Benson, who did not then know
of the conditions of the previous marriage.

In 1861, Anthony re-appeared in New Orleans, and was seen by
plaintiff's brother and by other persons; but it is in proof that plaintiff
was not informed of Anthony's re-appearance, of which she remained
in utter ignorance until the year 1865, at which time she heard it
through the defendant Benson himself, who, at the same time, in-
formed her that Anthony had since died. It then appears that the
latter's reappearance had caused serious doubts in the minds of the
parties and of their friends .touching the legality of their marriage.
Hence, on ecclesiastical advice, they went before a priest who admin-
istered the sacrament of matrimony to them some time in the year
1865..

It appears almost incredible that information of such importance,
as the reappearance of the first husband, Anthony, could have been
withheld from the most interested party, for such a length of time.

But the statement is made by plaintiff and by her brother in their
testimony, and no attempt has been made to contradict them, not even
by the testimony of the defendant Benson, who was present through-
out the whole trial, and who was never put on the stand. His silence,
under the circumstances, is strongly corroborative of that testimony,
and warrants its acceptance as the truth. Such testimony had not as
it could not have, been given on the first trial (38 Ann. 198), although,
if similar proof had been then made, the conclusion of the court, as
announced in that case, could not have been altered or modified in the
least; because there, the issue was the validity of the marriage, and
not the question of good faith of one, or both of the parties to a mar-
riage since declared null.

But on the question of good faith, the present record is conclusive,
and it leaves no doubt on our minds of the good faith of both parties

on both of the occasions on which they went through a marriage ceremony.

Having reached that conclusion, we must now determine whether the civil effects produced by that marriage, included or superinduced a partnership or community of acquets between the parties, as contemplated by the law-maker in Article 3399 of the Civil Code.

Our reports are about barren of adjudications precisely in point, and the discussion must therefore be met as a comparatively new question in our jurisprudence.

But as Article 117 of our Code has been taken literally from Article 201 of the Code Napoleon, we have directed our investigation to the construction of the Article which has prevailed under that system.

Our researches have led us to the conclusion that, where both the parties to a marriage, subsequently declared null, were in good faith, one of the civil effects was the legal community or partnership of acquets and gains which results from a lawful marriage; and that the relative rights of the parties must be tested under the same laws which govern the community rights *inter sese* of lawfully married spouses.

Toullier says: "Si les deux époux étaient obligés de se séparer de bonne foi, leurs droits seraient, à tous égards, les mêmes que si le mariage avait été légitime. Les droits de communauté s'exerceraient au moment de la séparation." Droit civil français; vol. 1, p. 378, § 661.

Treating of the same article, Demolombe wrote as follows: "Lorsque les deux époux sont tous deux de bonne foi, le mariage produit également, en ce qui les concerne, tous les effets civils, soit dans leurs rapports avec leurs enfants, soit dans leurs rapports réciproques. * * * La communauté, par exemple, se liquide et se partage comme si le jugement, au lieu d'annuler le mariage, l'avait seulement dissout, et tous les droits respectifs des partis doivent être déterminés comme si, en effet, la communauté elle-même s'était dissoute à partir de ce jugement." Cours du Code Napoléon; 3, vol. 1, p. 555, § 367.

Marcadé, in his commentaries on the same article, in which he notes the views of previous standard authors, uses the fallowing clear, instructive and conclusive language:

"Quand il y a bonne foi de part et d'autre, le mariage produisant alors les effets légaux pour les deux époux, le partage de la communauté se fera comme il se serait fait entre les deux époux divorcés, ou comme il serait fait entre un époux et les héritiers de l'autre, lors de la mort de celui-ci; c'est-à-dire que ce partage s'effectuera d'après les règles du code, s'il y a communauté légale, et conformément aux

clauses du contrat, s'il y a communauté conventionnelle." Explication du Code Napoléon ; vol 1, p. 527, §699; p. 531, §703 ; No. s.

The same views are expressed by Duranton (Droit Francais, Vol. 2, p. 344, §368) and by Laurent (Doit Civil, vol. 2, p. 646, §510.) In keeping with these views, which commend themselves by their clear logic and humane justice, and which we adopt as part of our jurisprudence on this question, we hold, in this case, that there was a community of acquets and gains between plaintiff and defendant, and that the said community was dissolved by the judgment of this court and in the case reported in the 38th of Annuals, p. 198.

Hence it follows that plaintiff must be recognized as the owner of one-half of all the property owned by, and standing in the name of the defendant Benson in the month of March, 1886, and which had been acquired by him between that date and the year 1859, when he contracted marriage with Plaintiff Kate McCaffrey.

The record shows to our satisfaction that the lot and improvements thereon, situated at the corner of Cutomhouse and Derbigny streets, the titles to which are inscribed in the name of "John H. Pierson," was in truth and in fact acquired by purchase by John H. Benson, defendant herein, and was his lawful property at the date of the dissolution of the community ; hence we hold that it forms part of said community.   We agree with the district judge in  treating the two other pieces of immovable property as likewise belonging to said community or partnership.

But as the community which we have found to exist between these parties, must in all respects, be assimilated to the legal conjugal community of our Code, and subjected to all its rules, it follows that while said community lasted, Benson, as the head and master of it, had the legal right to administer its property as his own, including the power to sell or otherwise dispose of any and all of its property, without the obligation of accounting for the proceeds of sales or for the rents and revenues of the same during his said administration or before the dissolution of the said community.

Hence it follows that the community rights of plaintiff must be determined by the condition of affairs as they stood at the date of the dissolution of the community, in the month of March, 1886.

There is, therefore, error in the judgment which condemns Benson to account for the rents and revenues of the community property, realized by him previous to the dissolution of the partnership; for the proceeds of the grocery store, and for a stated amount of monthly rents, until plaintiff acquires possession of her share of the immovables.  The

judgment is also erroneous in charging him with the estimated value of one-half of the furniture; there is no proof that any such furniture was owned by him or in his possession at the date of the dissolution of the community. Defendant is accountable for rents and revenues of the community property, only from the date of dissolution thereof, subject to credits in his favor for taxes, insurance, repairs and other reasonable expenses incurred by him in the preservation of said property.

But the record is not in a condition to justify an attempt on our part to liquidate the community in the judgment which naturally flows from the principles which are announced in this opinion, and the cause must be remanded for that purpose.

In order to better condense our decree we shall recast the judgment appealed from in full, including that portion of which we affirm, as above indicated.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, except in so far as it recognizes a community or partnership between the parties herein, as a result of the putative marriage which they had contracted in good faith; and proceeding to reifder such a judgment as should have been rendered below, it is now ordered, adjudged and decreed that a community of acquets be recognized to have existed between Kate McCaffrey and John H. Benson, and that said community consisted of all the property moveable and immovable, acquired by said Benson from and after the year 1859, and owned and held by him, at the date of the dissolution of said community by the judgment of this Court in March, 1886, including the three pieces of immovable property described in plaintiff's petition in this case; and, it is further ordered that this cause be remanded to the lower court for the purpose of settling and liquidating said community according to law and according to the views herein expressed; the costs of this appeal to be taxed to plaintiff and appellee, the costs of the liquidation herein ordered to abide the final determination of the case.