THOMPSON, J.
This was a partition suit as originally instituted, but by agreement the issue was restricted in the lower court to the question of ownership vel non of the community interest of Alpha Beck in 1,140 acres of land. Shortly after their marriage in 1854, Elias Beck and Alpha Beck (born Harcrow) established a matrimonial domicile in the parish of Bienville, where they resided until the death of Elias Beck in 1884. There were nine children born of the marriage, seven of whom are parties to this suit in their own right, and two predeceased are represented by their children.
Elias Beck left a will which was admitted to probate some few months after his death. Among the provisions of the will were the following:
“I will and bequeath to my wife during her life, the use and usufruct without bond, of all my lands and the improvements thereon, also stock and farming implements.
“I donate all my lands and stock, subject to my wife’s usufruct, equally to my four sons, Neal Beck, Nicholas Beck, William Beck, and Elias Beck, one-fourth each, to be divided as they and their mother see fit and as each of said sons become of age to receive his share thereof, but under her usufruct.
*193 “It is my will that neither my wife nor any of my children shall raise any question or claim as to a first or second community.”
The four sons named as legatees of the land were minors at the'time of the death of their father; the oldest of them being 17, and the youngest 13. The widow and the four sons named continued to live on the “old homestead” until the death of Alpha Beck in 1916. In 1905, the four legatees by different acts, under private signature, made an extrajudicial partition of the 1,140 acres of land. The name of their mother appears among the signatures to the acts of partition, but it is claimed that she did not sign the acts, nor was her name signed by any one legally authorized to do so. Mrs. Beck could neither-read nor write, but she was present, and it is fair to assume from the evidence that she verbally authorized one of her sons to sign her name. It is unnecessary to decide whether the signature to a sale of real estate, made under such circumstances, is legal or not. The acts of partition contain this statement:
“Alpha Beck, widow of the deceased, Elias Beck, joins herein to concur in said deed and to waive her rights as usufructuary to the property herein conveyed by partition.”
It may be stated that the tax collector was made a party to the suit, and it was shown contradictorily with him that there was no inheritance tax due.
There was judgment recognizing the plaintiffs and defendants as heirs of their mother Alpha Beck and ordering them sent into possession of all of the property belonging to her estate, including the undivided one-half interest in the land claimed by the four sons under the will of Elias Beck. The four sons named and Charles Beck have appealed.
Opinion.
[1] The land was acquired during the marriage of Elias Beck and. Alpha Beck and was presumed to be an acquisition of the community. It is true the deeds were taken in the name of Elias Beck, but they contained no recital or statement that the purchase was made with his separate funds, nor that the purchase was made for his individual account for the purpose of replacing individual property which he had sold. In the absence of such a recital or declaration, the presumption that it was a community purchase is conclusive against the husband and heirs claiming under him and cannot be rebutted. Sharp v. Zeller, 110 La. 61, 34 South. 129 ; Succession of Billis, 124 La. 117, 49 South. 998.
[2, 3] The community status of the property being fixed at the time of the purchase, no declaration in the will and no act of the husband, or of his heirs, to the prejudice of the surviving widow or her heirs, could change or affect that status. Of course, the husband as head and master of the community can sell the community property, and this is axiomatic; but he cannot dispose of any part of the community property during his life by a gratuitous title. O. C. art. 2404; Succession of' Sinnot v. Bank, 105 La. 706, 30 South. 233.
[4, 5] Nor can the husband dispose by last will and testament of any greater interest in the property of the conjugal partnership than his one-half interest therein. Succession of Maloney, 127 La. 913, 54 South. 146. The rule is well settled that a disposition mortis causa can have no effect until the death of the testator. Thomas v. Blair, 111 La. 683, 35 South. 811; Succession of Marks, 35 La. Ann. 1054.
[6] And it is a rule equally well settled that, at the moment of the death of the husband, the title to one-half of the community property immediately vests in his heirs and the other one-half vests in the surviving spouse. Tugwell v. Tugwell, 32 La. Ann. 848 ; Succession of Dumestre, 42 La. Ann. 411, 7 South. 624.
*195 [7] It is clear that the attempt, in the will of Elias Beck, to bequeath the wife’s interest in the land to his four sons, must be regarded as not written and wholly without legal effect as against the surviving widow and her heirs. And the same may be said of the suggestion or admonition to his wife and children “to raise no question as to first or second community.” Such a provision is binding on no one. The testator left some heirs by a prior marriage, and the stipulation as to first and second community was doubtless prompted by a sense of fear that a conflict might arise between the heirs of the two marriages.
1. It is contended that Mrs. Beck recognized and acquiesced in the will by joining in the act of partition with the four sons, and that, if living, she could not be heard to assert her community interest in the land, and for the same reason her heirs, other than the four sons, are estopped from doing so. If the language employed could be given the effect of a translation or conveyance by Mrs. Beck, or that she intended by the acts to recognize the will and to convey to her four sons her community interest, there was no consideration whatever received by her for either the land or for the waiver of her usufruct. As to Mrs. Beck and her heirs, the said acts were pure simulations, without any effect, and cannot form the basis of an estoppel.
[8] It is not pretended that the plaintiffs were present when the acts of partition were executed, nor that they took any part therein. Nor have these plaintiffs, since the death of their mother, committed any act of acquiescence in or ratification of the will that would estop them from asserting their interest in the land derived from their mother. We are unable to conceive how the plaintiffs could be estopped independently of the estoppel pleaded against the acts of their mother. ' They are claiming no right from their father’s estate, and any recognition of the will on their part prior to their mother’s death could not affect their right of inheritance from her. One cannot renounce a succession not yet devolved, nor can any stipulation be made with respect to such succession, even with the consent of him whose succession is in question. Succession of Jacobs, 104 La. 447, 29 South. 241; Murphy v. Murphy, 136 La. 17, 66 South. 382.
Forced heirs are not only not estopped from contesting the simulated acts of their parents, to which they were not parties, but they are specifically granted by statute the right to have such acts set aside even by parol evidence, and the right of action is not restricted to their legitime. C. C. art. 2239; Act 5 of 1884.
[9] 2. There is no basis for the pleaded prescription of either 10 or 30 years. The four sons were minors and lived with their mother, who was in possession of the property as usufructuary until her death in 1916. No one of the four heirs is shown to have possessed separately any designated part of the land for 30 years, at least not prior to the partition in 1905. The acts of partition were at the most only declaratory of title and are not such a muniment of title as required for the basis of the 10 years’ prescription. Kernan v. Daham, 45 La. Ann. 799, 13 South. 155; Pearce v. Ford, 124 La. 853, 50 South. 771.
For the reasons assigned, the judgment appealed from is affirmed, at the costs of appellants.