50 So.2d 208 (1950)
218 La. 603
DEMORUELLE
v.
ALLEN.
No. 40029.
Supreme Court of Louisiana.
November 6, 1950.
Rehearing Denied December 11, 1950.
Chas. J. Rivet, New Orleans, for applicant.
Doyle & Gremillion, Howard J. Smith and Chas. C. Gremillion, all of New Orleans, for respondent.
FRUGÉ, Justice Ad Hoc.
This is a suit for the partition of real property situated in the Parish of Plaquemines, owned by the former matrimonial community existing between Baldwin J. Allen and Arthemise Demoruelle, now his divorced wife. We granted writs herein to review judgments of the district court overruling relator's exception to the jurisdiction of that court ratione personae and plea of lis pendens, the latter having been based on the fact that proceedings for the final liquidation and definitive partition of the erstwhile community were pending before the Civil District Court for the Parish of Orleans.
The litigation between plaintiff and defendant is summarized as follows: On May 20, 1946, plaintiff instituted suit for separation from bed and board in the Civil District Court for the Parish of Orleans, and judgment was rendered in her favour on July 3, 1946. In June 1948 defendant *209 obtained an absolute divorce from her, and on October 17, 1949, in the same proceeding, sued for a liquidation of the community and a definitive partition of all its property. The record does not show that the inventory for which an order was secured was ever taken. On January 17, 1950, plaintiff instituted proceedings in the Parish of Plaquemines for the partition of real property there situated, alleged to have been owned by the former community.
The question presented for determination is whether, when a marriage community has been judicially dissolved, actions for the partition of its effects may be entertained simultaneously in every parish where those effects might be situated. We think not.
Neither the Revised Civil Code of 1870 nor the Code of Practice contains any specific provision for an action to partition a community, eo nomine.
Articles 1290 and 1327, R.C.C., provide as follows:
"1290. All the rules, established in the present chapter, with the exception of that which relates to the collations, are applicable to partitions between coproprietors of the same thing when among the coproprietors any are absent, minors, or interdicted, or when the coproprietors of age and present cannot agree on the partition and on the manner of making it.
"But in these kinds of partitions the action must be brought before the judge of the place where the property to be divided is situated, wherever the parties interested may be domiciliated."
"1327. The action of partition and the contestations which may arise in the course of the proceedings, are to be brought before the judge of the place where the succession is opened, though some of the parties interested may have their domiciles out of the jurisdiction of the judge." (Italics mine.)
And, Articles 165, Paragraph 1, and 924, Paragraph 14, of the Code of Practice provide as follows:
"165. Exceptions to Rule of Domicil: There are other exceptions to this rule which require that the defendant be sued before the judge having jurisdiction over the place of domicil or residence; they are here enumerated:
"1. Partition of Real Property. In matters relative to the partition of real property between several coproprietors, for in such cases the suit must be brought before the court of the place where such property is situated, though the coproprietors may reside in different parishes."
"924. Courts of probate have the exclusive power: * * *
"(14) To obtain and regulate all partitions of successions in which minors, interdicted or absent persons are interested, or even those which are made by authority of law, between persons of lawful age and residing in the State, when such persons can not agree upon the partition and mode of making it."
Before the problem of venue can be resolved, a determination of the nature of an action for the partition of community property must be madeis it an action between ordinary joint tenants in common, coproprietors of the same thing, or is it analogous to an action for the partition of succession property (itself presupposing a liquidation of the succession debts, either completed, or concurrent, or eventual)? It is the inclusion of these two distinct types of actions under one classification "Partition" which has caused the confusion. The matter seems to be res nova in our jurisprudence, but after a study of the codes, the French Commentators, and our own cases on the subject of partitions, we are constrained to the latter view.
With the addition of the clause "though some of the parties interested may have their domiciles out of the jurisdiction of the judge", Article 1327 R.C.C., constitutes a literal translation of Article 822, Paragraph 1, of the Code Napoleon of 1804:
"822. L'action en partage, et les contestations qui s'élèvent dans le cours des operations, sont soumises au tribunal du lieu de l'ouverture de la succession.
"C'est devant ce tribunal qu'il est procédé aux licitations, et que doiventêtre portées *210 des demandes relatives à la garantie des lots entre copartageants et celles en rescision de partage."
The Code Napoleon provides, furthermore, that in partitioning community property (regardless of the reason for the dissolution of the community) and partnership property, the rules applicable to the partition of succession property shall be applied:
"1476, C.N. Au surplus, le partage de la communauté, pour tout ce qui concerne ses formes, la licitation des immeubles quand il y a lieu, les effets du partage, la garantie qui en résulte, et les soultes, est soumis à toutes les régles qui sont etablies au titre Des Successions pour les partages entre cohéritiers."
which translated reads:
"In all other respects, the division of the community, in connection with the proceedings, the judicial sale of real estate when necessary, the effects of the division, the warranty resulting therefrom, and the balances due, is subject to all the rules specified in the title Of Successions for divisions between co-heirs. Civ.C. 815 et seq., 883 et seq. 2103-3°, 2109." (Translation by Henry Cachard, The French Civil Code, Paris, The Lecram Press, 1930.)
"1872, C.N. Les régles concernant le partage des successions, la forme de ce partage, et les obligations qui en résultent entre les cohéritiers, s'appliquent aux partages entre associés."
Article 1872, C.N., has been carried over into our Code, translated almost verbatim, as Article 2890, reading as follows:
"2890. The rules concerning the partition of successions, the manner of making such partition, and the obligations which result from the same, between heirs, apply to partners."
It is logical to assume that the redactors of our Code took cognizance of Article 1476, Code Napoleon when, in formulating Article 1290 (for which there is no distinct counterpart therein) they prescribed that "All the rules, established in the present chapter (i. e., Successions) * * * * are applicable to partitions between coproprietors of the same thing * * *." Moreover, such assumption would be in accord with the concept of the community as an être moral. The community "like other partnerships, must be contemplated as an ideal being, être moral, distinct from the persons who compose it, having its rights and obligations, its assets and its liabilities, its debtors and creditors." Childers v. Johnson, 6 La.Ann. 634, 641. The civilian viewpoint, which, as to the procedure to be followed in partitioning a community, did not differentiate between dissolution by death and dissolution by divorce, was followed in the case of McCaffrey v. Benson, 40 La.Ann. 10, 3 So. 393, involving the liquidation of a putative community, neither partner of which was deceased.
In what instances, then, is the partition action to be brought before the judge of the place where the property to be divided is situated? The proper forum for the licitation of real property would be that of the situs of the property. Johnston v. Burton, 202 La. 152, 11 So.2d 513. But, by its very nature, however, a suit for partition of succession property (and community property, and property belonging to a partnership) is ancillary, arising from, and growing out of the main proceeding.
The judgment overruling the exception of Baldwin J. Allen to the jurisdiction ratione personae, was under Art. 165(1), C.P., and Art. 1290, R.C.C., paragraph 2, correct. But the entire proceeding in Plaquemines Parish was prematurely brought, for the reason that a suit for partition of the erstwhile community was already pending before the court which had had jurisdiction of the proceedings that dissolved the marriage, as well as the community of acquets and gains. While in this particular instance, neither litigant has alleged the existence of any liabilities on the part of that community, it is foreseeable that in similar cases the communities may be burdened with debt, even to the point of insolvency, or that all the liabilities may exist within the jurisdiction of one court and all the assets within the jurisdiction of another.
The case of Levy v. Hitsche, 40 La.Ann. 500, 4 So. 472, contains the following comment on the meaning of Article 1290, R. *211 C.C., paragraph 2 (40 La.Ann. 500, 503 ff., 4 So. 472, 473 ff.):
"In Gosselin v. Gosselin, 7 Mart.N.S. 469, the court said: `By the Code of Practice, (article 924, par. 14,) the court of probates has exclusive jurisdiction of partitions.
"`This Code was approved in 1824, and, after its approbation, but before its promulgation, the legislature, by an act of 1825, (page 122, § 3,) gave to the district court jurisdiction of suits for partition. * * * Thus the jurisdiction of the court of probates, which was exclusive in cases of partition, by the Code of Practice, was rendered concurrent only by the act of 1825,posterior to the approbation of the Code by the government, anterior to its promulgation.'
"In many subsequent decisions their successors maintained the concurrent jurisdiction of the ordinary and probate courts in partition suits, while all upheld the exclusive jurisdiction of the courts of probate in all other respects. Gague v. Gague, 3 Mart.N.S. 172; Hooke v. Hooke, 6 La. 420; Craighead v. Hynes, 2 La.Ann. 150.
"This resulted in a line of demarcation being drawn between the character of partition suits which could be brought in each respectively.
"Hence we have the provision of the Civil Code that actions for `partitions between co-proprietors of the same thing * * * must be brought before the judge of the place where the property to be divided is situated,'Rev.Civil Code, art. 1290, (1304)as contradistinguished from those of Code Pr. art. 1022, above quoted, but which did not interfere in anywise with those of Code Pr. art. 924, § 14.
"The adjustment of the jurisdiction of the ordinary and probate courts, in matters of partition, under those textual provisions, was attended with difficulty; but it was effectually accomplished and the jurisprudence settled.
"One of the questions on which most frequent discussions arose during this process of adjustment was whether or not an action for the partition of community property between the survivor and the heirs of the deceased spouse should be brought in a court of ordinary or probate jurisdiction.
"In the case of Babin v. Nolan, 4 Rob. (La.) 278, it arose and was decided; and, in the course of their argument, the court took occasion to review the jurisprudence, and pronounced their opinion in the following unmistakable terms:
"This `is essentially an action for the settlement and partition of the community, in which the plaintiff, in the right of his sister, who was the defendant's late wife, seeks to ascertain, establish, and recover the portion to which the deceased was entitled in the active mass of the community; and, ever since the decision of the court in Turner v. Collins, 1 Mart.N.S. 370, courts of probate have been repeatedly and uniformly recognized in our jurisprudence to have jurisdiction, if not exclusive, at least concurrent with the district courts in such cases. * * *'"
Since the functions of the former probate courts and "ordinary" courts have long ago been merged in those of the present district courts, the above excerpt is of value only by way of interpreting the seeming hiatus between Article 1290, paragraph 2, R.C.C., and the other articles of the Civil Code and Code of Practice relating to venue.
It is contended that Rhodes v. Rhodes, 190 La. 370, 182 So. 541, and Giglio v. Giglio, 159 La. 46, 105 So. 95, constitute authority for the prosecution of the partition suit in Plaquemines Parish. We fail to agree with this contention.
The decision in Rhodes v. Rhodes merely stands for the proposition that either partner to the marriage may initiate the proceedings. There only one partition suit was instituted, by the wife, which the husband opposed on the grounds (1) that it was in derogation of the rights of mortgage creditors and (2) the community being insolvent, the sale to effect a partition had to await the liquidation of debts. Neither defense could operate to defeat her right to initiate the action for partition, for it seems obvious that in the course of any definitive partition, provision must be made for the payment of such debts as *212 might still exist. Only in that sense can the hypothesis be maintained that the prior liquidation of debts is not prerequisite to the action for partition.
In Giglio v. Giglio the wife's right to provoke a partition was again upheld. We said:
"When the judgment dissolving the marriage between plaintiff and defendant became final, they became co-owners in indivision of all the property which belonged to the matrimonial community (the wife having accepted the community within the delay prescribed by law), and either one of them had the unquestioned right to provoke a judicial partition of the community property. This proposition is not disputed by the defendant.

* * * * * *
"It may be, as contended by defendant, that his liabilities largely exceed in amount the value of his interest in the property, and it may be that his interest is under seizure (there is no evidence to this effect), still that fact would not deprive the plaintiff of the right to have a sale of the property for the purpose stated." (159 La. 46, 50, 51, 105 So. 95, 96, 97.)
The rules of law relating to the nature of the community interest are summarized in Tomme v. Tomme, 174 La. 123, 127 ff., 139 So. 901, 903, as follows:
"`Every marriage contracted in this State, superinduces of right partnership or community of acquets or gains, if there be no stipulation to the contrary.' Civ.Code, art. 2399.
"The husband is head and master of this community, administers its effects, and may alienate them without her consent. Civ. Code, art. 2404.
"The debts contracted during the marriage enter into this partnership or community of gains and must be acquitted out of the common fund. Civ.Code, art. 2403.
"The spouses have only a residuum or residuary interest in this community. The debts must first be paid, and if, at its dissolution, anything remains, they share it equally. "Civ.Code, art. 2406. If nothing remains after the debts are paid, neither gets anything. It follows therefore that the question whether either spouse gets anything after the community is dissolved depends upon whether the community is solvent or insolvent.
"The husband, being head and master of the community, is presumed to be in possession of its effects during its existence, and at its dissolution, and he may retain and use the property in order to pay the community debts. Rusk, Adm'r v. Warren, 25 La.Ann. 314.
"After the dissolution of the community by death of one of the spouses or by judgment, it still has a fictitious existence `for the purposes of liquidation and settlement of community debts.' Succession of Blanche Dumestre, 42 La.Ann. 411, 7 So. 624.
"But neither the spouses nor the heirs have anything to claim out of the acquets and gains `until all the debts are paid or liquidated.' Lawson v. Ripley, 17 La. 238; Suc. of McLean, 12 La.Ann. 222; Hart, Heirs v. Foley, 1 Rob. 378.
"The law contemplates that there shall be a liquidation, a settlement of the community affairs after its dissolution, without which there is no way of ascertaining the net value thereof. Under no theory can it be said that the former husband owes his divorced wife anything unless a liquidation of the community shows some net amount remaining in his hands after the property is disposed of and the debts are paid.

* * * * * *
"At the dissolution of the community, the effects which compose the partnership or community of gains are divided into two equal portions between the husband and wife or their heirs. Civ.Code, art. 2406. When the community is dissolved, the respective interests of the husband and wife or their heirs attaches at the moment of its dissolution to the property of the community, subject to the payment of the debts. Succession of Blanche Dumestre, supra. Tugwell v. Tugwell, 32 La.Ann. 848; Ramsey et al. v. Beck et al., 151 La. 190, 91 So. 674.
*213 "When the community is dissolved by judgment as in this case, the spouses each get, not half the value of the effects, but each a one-half interest in the effects themselves, which may be divided, partitioned, and it is settled jurisprudence that where the former husband remains in possession of the community property, the wife or her heirs may sue for her share of the property before the community has been liquidated and without alleging that it is insolvent. Tugwell v. Tugwell, supra; Glasscock v. Clark, 33 La.Ann. 584; Heirs of Murphy v. Jurey & Gillis, 39 La.Ann. 785, 2 So. 575; Sue. of Dumestre, supra; Verrier v. Loris, 48 La. [Ann.] 717, 19 So. 677; Levy et al. v. Robson, 112 La. 398, 36 So. 472.
"This is for the reason that if she gets the property itself she takes it subject to the debts." (Italics mine.)
Obviously, then, Mrs. Allen could have instituted the suit in the Civil District Court for the Parish of Orleans to partition the remaining community property, she and her husband having already joined as co-owners in the sale of certain of the real estate. While it may be that there has been some deliberate dilatoriness in completing the partition of the property in Orleans Parish, her remedy to expedite its conclusion did not lie in instituting another suit for partition in a different parish.
The case of Mitcham v. Mitcham, 186 La. 641, 173 So. 132, is not in point, since it involved the partition of property owned by co-heirs who had been put into possession. It was held that the heirs having accepted the successions of their parents purely, simply and unconditionally, and having been placed in possession of the real estate by judgment of court, the succession no longer existed.
For the reasons above set forth, the judgment of the Twenty-fifth Judicial District Court overruling relator's exception to its jurisdiction ratione personae is affirmed, and the judgment of the Twenty-fifth Judicial District Court overruling relator's exception of lis pendens is reversed, annulled and set aside, the writs of mandamus and prohibition are made peremptory, and the exception of lis pendens is ordered maintained, the suit of Mrs. Arthemise Demoruelle Allen to be dismissed at her costs, relator Baldwin J. Allen to pay all costs of this Court.
McCALEB, J., concurring.
It cannot be doubted that, upon dissolution of the community between Allen and his wife by the judgment of divorce rendered in the Civil District Court, the spouses became co-owners in indivision of the common property. Giglio v. Giglio, 159 La. 46, 105 So. 95; Tomme v. Tomme, 174 La. 123, 139 So. 901 and Rhodes v. Rhodes, 190 La. 370, 182 So. 541. Therefore, inasmuch as ownership, rather than possession, is the basis for the action of partition, Civil Code, Article 1320, either party had the right to demand a partition of the community effects and, in an ordinary case of partition of real property, venue of the suit would be in the forum where the land was situated. Article 165, paragraph 1, Code of Practice and Article 1290 of the Civil Code.
However, the issue in this case is not whether the district court in Plaquemines Parish would have jurisdiction of a suit for a partition of community real estate situated there. Rather, the question is whether the Civil District Court, by virtue of the petition filed therein by Allen for a partition of all of the community effects, became vested with plenary power over not only the movable effects but also the realty wherever situated in this State. If the Civil District Court acquired jurisdiction, the court in Plaquemines Parish is without jurisdiction under the well-settled rule that "when two courts have concurrent jurisdiction over the same subject matter, the court which first obtains jurisdiction and possession of the res retains it to the end of the controversy to the exclusion of all others". State ex rel. Terry v. Nugent, 212 La. 382, 31 So.2d 834, 836; Geilinger and Blum v. Philippi, 133 U.S. 246, 247, 10 S.Ct. 266, 33 L.Ed. 614; Lake Bisteneau Lumber Co. v. Mimms, 49 La.Ann. 1283, 22 So. 730 and cases there cited.
The contention of respondent, therefore, in opposing perpetuation of the alternative *214 writs issued herein, is and necessarily must be that, although the Civil District Court acquired jurisdiction to partition all movable effects, it could not have jurisdiction to partition immovable property situated outside of Orleans Parish for the reason that, under Paragraph 1 of Article 165 of the Code of Practice and Article 1290 of the Civil Code, jurisdiction over a partition of real estate is exclusive in the court of the situs of the property.
I believe this argument to be unsound. Initially, it is unthinkable that the framers of Articles 165 of the Code of Practice and 1290 of the Civil Code intended that the provisions of those articles were applicable in cases where a community estate was to be settled and that the court having jurisdiction of the parties and the matrimonial domicile would be deprived of the right to partition all of the community assets wherever situated.
The Civil Code, in dealing with the incidental proceedings to which a suit for separation or divorce may give occasion, makes provision for custody of children, alimony, inventory of the community property and injunction against the husband, restraining him from disposing of any part thereof. See Articles 146 through 151. And Article 155 declares that the separation from bed and board carries with it a separation of goods and effects. Accordingly, the liquidation and settlement of community property and definitive partition thereof, in matters (like this) where it is demanded, is essentially a concomitant of the tribunal having jurisdiction of the divorce proceedings.
Counsel for respondent, mistakenly, I think, would place this case in the same category with suits involving a partition of property between co-heirs who have been put in possession of a succession. In those matters, it has been held that, since the succession is closed by the judgment of possession, an action for a partition must be brought at the situs of the property, as in ordinary suits. See Medicis v. Medicis, 155 La. 171, 99 So. 27; Prichard v. McCranie, 160 La. 605, 107 So. 461; Mitcham v. Mitcham, 186 La. 641, 173 So. 132; Caraway v. Hebert, La.App., 182 So. 164 and Doll v. Doll, 206 La. 550, 19 So.2d 249. Those cases might be applicable in divorce matters where the court, after pronouncing the divorce and dissolution of the community, is not requested to settle and partition the community estate. But where, as here, there is a partition demanded, the court granting the divorce retains jurisdiction for the final settlement and definitive partition of all community property.
I respectfully concur in the decree.