KLIEBERT, Judge.
The judgment, dated June 5, 1985, devol-utively appealed from by Alma Ludwig Garcia, the wife, effected an accounting of and divided the remainder of the property of the community formerly existing between her and Emilio Garcia, the husband. Based on the accounting, the judgment ordered the wife to pay the husband $54,-987.15 from her one-half of the proceeds of the sale of community real estate.
The first three of the wife’s assignments of error involved the use by the trial court of amounts other than those stipulated to by the parties in computing the sum owed by the wife. In her remaining assignments of error, the wife contends the trial judge erred in considering expenses paid by the husband pursuant to a court order dated September 5, 1980 as reimbursable expenses and in failing to have the husband account for the sum on deposit in a community checking account at the time the petition for separation was filed.
The husband answered the appeal and urged as error the trial court’s award to the husband of $14,931.63 rather than $45,-218.61 as reimbursable expenses for expenditures incurred by the husband in the administration of jointly owned oil and gas interests and in charging the husband with a 100% interest rather than a 50% interest for an oil and gas interest allotted to him in the division of assets. For the reasons hereinafter stated, we amend the judgment and, as amended, affirm.
The parties were judicially separated by a judgment dated September 5, 1980, rendered by the Twenty-fourth Judicial District Court, Parish of Jefferson. A final judgment of divorce was rendered by the Civil District Court for the Parish of Orleans on November 3, 1981. The parties agreed to and effected a partial settlement of the community by a notarial act dated January 22, 1982.
Thereafter, the parties sought to divide in the separation proceeding the remainder of the property of the community formerly existing between them. A substantial portion of the evidence was introduced by stipulation of the parties over several hearings. The stipulation included an agreement to use July 29, 1980, the date on which the separation petition was filed, as the effective date for the partition of the community. The piecemeal settlement and hearings, lack of a full accounting in the record, insufficient explanation of computations and poor assembly of the record and exhibits made an otherwise easy task difficult.
The accounting or computation to arrive at the $54,987.15 the wife was ordered to pay to the husband was contained in the trial judge’s reasons for judgment and provided, in part, as follows:
“The parties have stipulated that Mr. Garcia is entitled to reimbursement of the following expenses:
$ 2,623.67 - Diamondhead lots
33,412.56 - Veterans Highway property
*1352 $ 524.28 - Progress Petroleum
65,407.78 - Income tax payments”
In her first two assignments of error counsel for the wife points to the fact and in brief counsel for the husband agrees that the trial judge erroneously used $33,-412.65 for the Veterans Highway Property expenditures and $65,407.78 as the income tax payments rather than the stipulated amounts of $22,870.15 and $31,428.40. Since the error changes the accounting and hence the amount owed by the wife to the husband, we will hereinafter make the necessary computation and amend the judgment accordingly.
Further, in the accounting and the computation to arrive at the amount owed to the wife by the husband, the trial judge, in his reasons, stated the wife was entitled to reimbursement, among others, of $468.00 received by the husband from the sale of salvage from a jointly owned interest in an oil well. In her third assignment of error the wife contends the trial judge erred because he failed to use the stipulated amount of $1,968.75. In her brief, counsel for the husband concedes the error. We will therefore use the stipulated amount in making our computation and amend the judgment accordingly.
We next consider the wife’s fourth assignment of error; i.e., the trial court erred in awarding to the husband reimbursement for some $102,118.64 of expenses for the farm, vehicles, life insurance and house trailer, ordered paid by the husband under a consent judgment dated September 5, 1980. Although by separate judgment it was apparently rendered at the same time as the judgment of separation. The wife contends this portion of the judgment was in error in that the listed payments were alimentary in nature, hence, not subject to reimbursement. To support her contention, the wife points to consent judgment of September 5, 1980, which provides:
“This matter came before the Court on September 5, 1980 for trial on motions for custody, child support, alimony and preliminary injunctive relief.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant shall pay all reasonable and necessary expenses attendant to the operation of the White Oaks farm, to the full extent that these expenses have been paid in the past, including utilities, feed and veterinary expenses for the livestock, as well as appropriate insurance, maintenance and operation expenses for the mechanical equipment, all of which expenses are intended to be paid by defendant to the same extent as they have been paid in the past, which payments are not to be construed as alimony.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant shall continue to pay the monthly notes on all of the immovable property and any vehicles, and to continue to pay the premiums on all existing life insurance without affecting any change in the designated beneficiary thereof, which payments are not to be construed as alimony.”
The wife argues that the preamble of the judgment shows the purpose of the quoted provisions was to provide support. Consequently, the payments are alimentary. To support her contentions, she cites Cox v. Cox, 447 So.2d 578 (1st Cir.1984) where the court was called upon to determine if the Family Court of East Baton Rouge Parish had jurisdiction to order a husband to pay the mortgage notes on the family home. The Cox court concluded it did, and in so doing said:
“Plaintiff first argues that by ordering plaintiff to maintain the home mortgages and specifically stating that such payment does not constitute alimony or child support, the trial judge went beyond his statutory jurisdiction described in La. R.S. 13:1401(7). We disagree.
The word alimony refers to the nourishment, lodging, and support of the person who claims it. La.C.C. art. 230. By ordering plaintiff to maintain the mortgages on the home, the trial judge was providing living accommodations for defendant and her minor child. We find *1353 that the furnishing of the family home without payment by Mrs. Cox is a part of the support for plaintiffs wife and child. The order to pay the mortgages was a means of assuring the continued availability of that family home. As a matter of fact, counsel for appellant informed the court at the beginning of the trial it would have to decide who would be required to pay the house notes. We find no error.” (Footnote omitted)
Here, the trial judge, in his extensive and well reasoned written reasons for judgment said:
“These payments were not alimony payments. The consent decree of September 5, 1980, states that such ‘payments are not to be construed as alimony.’ ‘By its very nature a consent or compromise judgment is a bilateral contract wherein the parties adjust their differences by mutual consent, thereby putting an end to litigation, or anticipated litigation ...’ BRANING v. BRANING, 449 So.2d 670 (LA.APP. 4TH CIR.1984).” (Emphasis Supplied)
We cannot say the trial judge erred in his interpretation of the consent judgment. The parties specifically agreed that these payments were not alimony and as stated by the learned trial judge, it is the law between the parties. That fact alone distinguishes it from the Cox case, supra.
In her last assignment of error, the wife contends the husband’s checking account had a balance as of the close of business on July 28, 1980 (the day before the petition for separation was filed) of $85,428.64. Checks totaling $65,349.52 (mostly for payroll checks for community owned businesses) were processed through the account on July 29, 1980, leaving a balance of $24,543.64 at the close of business on that day, i.e., the day on which the community was to be partitioned. Counsel contends there is no evidence as to the disposition of the $24,543.64, therefore, the husband should reimburse the community for these funds. The contention is at variance with the record. Although the can-celled checks are not in the record, we note the husband (Tr. pp. 31-33, 10/20/84) testified he used $21,000.00 plus of the balance in the account to purchase a house in Baton Rouge on July 30, 1980. The house so purchased was co-owned and has been so treated throughout the partition proceeding. In essence, the remainder of the community checking account was converted to jointly owned property which was divided between the parties. Therefore, no accounting was due because the account was self-liquidated.
We next consider the husband’s assignments of error. Again, in accounting for or in computing the amount owed by the husband to the wife, the trial judge said in his reasons for judgment:
“The interest in the oil and gas properties is allocated to Mr. Garcia in its entirety. The court has considered the nature of the asset and finds Mr. Garcia is more qualified to manage it. The value placed on this asset by the Court is based on the testimony of Mr. Garcia on April 3, 1985. Mr. Garcia is a credible witness and there was no evidence introduced to contradict his testimony.
The allocation of this asset in its entirely to Mr. Garcia results in an unequal net distribution. The Court orders that $4,000.00 in cash shall be paid to Mrs. Garcia. LA.R.S. 9:2801.”
The husband contends the judgment should be amended to reflect one-half of the value of the property or $2,000.00. At the April 3, 1985 hearing, the husband estimated the property to be valued at $4,000.00 (Tr. April 1985, p. 13). Hence, allocation of this asset would require a payment of $2,000.00, under LSA-R.S. 9:2801, et seq. rather than $4,000.00, for otherwise the husband would be charged for his half interest as well as the wife’s interest.
Mr. Garcia next assigns error to the portion of the trial court’s reasons for judgment which provides:
“Mrs. Garcia has no interest in the oil and gas wells which he agreed to participate in after the separation. Mrs. Garcia is not liable for the loss suffered by Mr. Garcia as a result of his exercise of *1354 the option. The option was acquired dur-
ing the existence of the community and was exercised by Mr. Garcia after the community was terminated. Mr. Garcia could not have exercised the option on behalf of and for the benefit of the community. He could not bind Mrs. Garcia after the termination of the community property regime. It is questionable whether Mr. Garcia had the authority to exercise the option without the consent of Mrs. Garcia. The parties were co-owners in indivisión when Mr. Garcia alone exercised the option. Mr. Garcia is therefore entitled to reimbursement of $14,931.63 and not $45,218.61.”
The husband contends the trial court erred in not including well expenses incurred after the petition for separation was filed as reimbursements due to the husband. On December 30, 1983, Mr. Garcia filed a sworn descriptive list of community property assets and liabilities. Listed under Liabilities (9) is net unreimbursed expenses of Emilio Garcia for Progress Petroleum as $14,931.63. This item refers to attached Exhibit T. Although not originally included in the record, on motion of Mr. Garcia, the record has been supplemented by including Exhibit T along with other exhibits.
On June 22, 1984, Mr. Garcia filed a supplemental and amended sworn detailed descriptive list of community assets and liabilities in which he amended Liability No. 9 to reflect $49,568.00 instead of $14,-931.63. The item refers to amended Exhibit T which was attached to and now forms a part of the record before us and shows the following:
“EXPENSES
BNO #101 9-29-80 11362.-
#102 10-15-80 5085.-
#116 1-01-81 6774.-
#150 7-10-81 6948.-
#213 8-05-81 6895.-
#266 9-30-81 6245.-
#267 9-30-81 6948.-
#331 11-24-81 5210.-
#497 6-15-82 1168.91
FNBC #513 4-27-82 1460.38
#573 8-06-82 1016.32
WHITNEY #011 5-13-82 6245.-
65357.61
INCOME
Gross Operating Net
Income Expenses Taxes Income
1980 6366 2413 797 3156
5/12 1980 1315
1981 12890 1546 2293 9051
1982 11380 5762 1604 4014
1983 Hail 7403 2466 606 4331
1983 Onix 847
1984 Hail 581
20139
NET LOSS 45218.61”
Thus, Exhibit T shows that the oil venture had additional income and expenses after the date of the filing of the petition for separation.
*1355 The record also contains the transcript of a hearing held after a discussion in chambers on April 3, 1985. At that hearing the husband’s attorney stated that after the December 1983 descriptive list was filed they reconsidered their legal positions and included properties acquired by option by Mr. Garcia acting alone, after the separation, as community property. He also stated that Mr. Garcia testified that the exercise of those options netted an operating loss. This operating loss is the additional amount the husband claims he was entitled to in his amended descriptive list.
The expenses totaling $65,357.61 itemized above constituted well drilling costs for wells drilled initially by a company called Petroscope and later by a successor to that company called Hail Petroleum (collectively hereafter referred to as Petro-scope).
From the husband’s testimony at the April 3, 1985 hearing and the stipulation of the parties as to Mr. Garcia’s testimony (attached to Mr. Garcia’s brief in the trial court) it is apparent that prior to the separation Mr. Garcia obtained a mineral interest “in various oil and gas” ventures. Unlike a royalty interest, the ownership of the mineral interest owned by the community (apparently a working interest) required active administration and judgment calls. The decisions made by the husband in the administration of the interest were directly related to the share of production income allotted to the interest. Participating in particular operating decisions could increase allotted income or failure to participate could result in penalties. Additionally, participating in the venture did not guarantee production income for the venture might be unsuccessful.
Prior to the separation, Mr. Garcia alone made the decisions necessary to administer the mineral interest. Subsequent to the separation he continued to make the decisions alone but for the joint interest of the co-owners. In all instances, he exercised the option to participate in drilling activities except for the proposed drilling of the Norman # 4 and # 5 wells. As shown by the above quoted portion of Exhibit T, the net effect of the decisions made subsequent to the mineral interest was a loss of $45,218.61.
The trial judge concluded Mr. Garcia could not unilaterally bind his wife for the net loss because following the separation they were co-owners in indivisión of the mineral interest. We disagree.
The nature of the mineral interest requires active administration for its maintenance. In our view, the decision to participate or not participate in a particular drilling or reworking venture in order to maintain and/or enhance it is no different from the decisions which have to be made in the operation of a grocery store, restaurant, or clothing store. In essence, the administration of the mineral interests owned by the community is comparable to the conduct of a business by one spouse, subsequent to the termination of the community. In legal theory (as established in the line of cases hereinafter cited) the community is fictionally considered to remain in existence for the purpose of continued operation and preservation of the community owned business with both parties sharing in its income and expenses. Moreover, if the wife shares in the fruits, as she did here, when the mineral interests were sold, equity requires that she also participate in the losses. See Demoruelle v. Allen, 218 La. 603, 50 So.2d 208 (1950); Phillips v. Wagner, 470 So.2d 262 (5th Cir.1985); Abbott v. Abbott, 456 So.2d 1028 (5th Cir.1984).
Accordingly, we hold the trial judge erred in failing to classify the net loss of $45,218.61 on the Petroscope mineral interest as reimbursable to the husband by the community.
For the foregoing reasons, therefore, we compute the amount owed by the wife to the husband as follows:
Trial Court Judgment $58,987.15 Deduct:
Error-Veterans Highway
Property (½ of $33,412.65-$22,870.15) 6,271.25
Error-Income Tax Payments (½ of $65,407.78-$31,428.40) 16,989.69
*1356 Error-Salvage Value (½ of $l,968.75-$468.00) $ 750.37
Sub-total 35,975.84
Add:
Error in charging full value for mineral interest to Mr. Garcia $ 2,000.00
Net loss in Petroscope Mineral Interest (⅜ of $45,218.21-$14,931.63) 15,143.29
17.143.29
Total owed by Mrs. Garcia to Mr. Garcia $53,119.13
Accordingly, we amend the trial court judgment to provide that the amount owed to Mr. Garcia by Mrs. Garcia from the sale of the Veterans Highway property is $53,-119.13. In all other respects, the trial court judgment is affirmed. Each party to bear his own cost of the appeal.
AMENDED AND, AS AMENDED, AFFIRMED.