McCALEB, Justice.
 

 This is a habeas corpus proceeding in which the Commissioner of Public Welfare, seeks to recover possession of an infant child from the defendants, Mr. and Mrs. Fred Nugent, who are holding the child under a foster home arrangement.
 

 The facts of the case are not disputed. The child, Allen Reed, was born in Shreveport on May 27, 1945. He is the illegitimate son of one Sarah Jane Reed who was a minor eighteen years old at the time of his birth. Shortly thereafter, Miss Reed requested the Caddo Parish Department of Public Welfare to care for the child through a boarding arrangement and, on June 5, 1945, she signed an agreement obliging herself to pay $5 per month towards the upkeep of the child, who was placed in the Hephzibah Rescue Home. Pie remained there uutil December 13, 1945, when he was transferred to the home of Mr. and Mrs. Nugent, who had previously applied to the Caddo Parish Department of Public Welfare for the placing of children in their home under a foster parent arrangement by which they were to. be remunerated for the upkeep of their temporary wards. At the time that Allen Reed was received in the Nugent home, Mrs. Nu-gent signed an agreement with the Department of Public Welfare which provided that the child was to remain in her home “at the discretion of the Department.” Mr. Nugent fully understood the arrangement (although he did not sign the agreement) to be that the child was not being placed for adoption and that the Department had the right to remove him at any time it saw fit.
 

 On February 19, 1946, the mother executed a formal surrender of the child to the Department of Public Welfare. This
 
 *194
 
 surrender was made before a Notary and two witnesses in compliance with the provisions of Act No. 91 of 1942, which permits unmarried mothers to surrender their children to agencies or institutions approved by the Department of Public Welfare or to the Juvenile Court for purposes of adoption.
 

 Soon after the child was placed in their home, Mr. and Mrs. Nugent grew to love him and signified their desire to adopt him. However, the Department of Public Welfare, believing, among other things, that Mr. Nugent was over emotional with regard to the child, let it be known that it did not consider the Nugents to be the best available adoptive parents. When the Nugents acquired this information and realized that the child was to be taken from them, they made inquiry concerning the mother and, upon learning her identity, prevailed upon her to execute a surrender of the child to them, which is identical in form with the surrender previously made by her to the Department of Public Welfare. This surrender is dated June 7, 1946. Five days afterwards, on June 12th, Mr. and Mrs. Nugent filed a petition in the Caddo Parish Juvenile Court praying for the adoption of the child. In accordance with the provisions of Act No. 1S4 of 1942, the Department of Public Welfare was made a party to the adoption proceedings for the purpose of making an investigation and reporting to the court at the hearing, which was fixed for July 26, 1946. However, prior to the date fixed for the hearing in the Juvenile Court, specifically, on June 22, 1946, the Commissioner of Public Welfare, as the representative of the State Department, filed the instant habeas corpus proceeding against Mr. and Mrs. Nugent in the First Judicial District Court praying that the Nugents be commanded to turn over the care and custody of the child to the Department. The District Court issued an alternative writ returnable on July 24, 1946, or two days before the adoption proceeding was set for hearing in the Juvenile Court.
 

 On the day of the trial of the habeas corpus proceeding, the Nugents appeared and resisted the demand on various grounds (many of which were subsequently abandoned). Following the hearing, the Judge maintained the writ and commanded the Nugents to restore the child to, the custody of the Department of Public Welfare. They have prosecuted a suspensive appeal from the adverse decision.
 

 In this court, the Nugents have specified the following alleged errors which they claim require a reversal of the judgment of the court below, viz.:
 

 “(1) That the Department of Public Welfare did not acquire the legal custody of the child under the act of surrender from his mother for the reason that Act No. 91 of 1942 does not authorize the Department to accept the surrender of the legal care, custody and control of children of unmarried mothers. Rather, the statute
 
 *195
 
 restricts the right of acceptance to a Juvenile Court or to institutions or social agencies approved by the Department of Public Welfare, and
 

 “(2) That, at all events, the writ of habeas 'corpus should not be perpetuated since to do so would be inimical to the welfare of the child.”
 

 We find that it is not necessary for us to discuss or pass upon the foregoing contentions (although they appear to be unsubstantial) forasmuch as a casual recitation of the events culminating in the filing of the suit makes it doubtful that the District Court ever acquired jurisdiction of the controversy. Indeed, at the threshold of this case, we find ourselves confronted with a conflict between the jurisdiction of the Caddo Parish Juvenile Court and the First Judicial District Court which must be disposed of before any other matter is considered. This conflict results from the fact that the Nugents filed an adoption proceeding in the Juvenile Court under the provisions of Act No. 154 of 1942 prior to the time the Commissioner sought to obtain relief by writ of habeas corpus.
 

 The issue in contest is the right to custody of the child, Allen Reed. If, as an incident to his adoption, the Juvenile Court acquire jurisdiction to determine the question of custody, the Civil District Court was without jurisdiction under the well-settled rule that, when two courts have concurrent jurisdiction over the same subject matter, the court which first obtains jurisdiction and possession of the res retains it to the end of the controversy to the exclusion of all others. See Geilinger v. Philippi, 133 U.S. 246, 247, 10 S. Ct. 266, 33 L.Ed. 614; Lake Bisteneau Lumber Co. v. Mimms, 49 La.Ann. 1283, 22 So. 730 and cases there cited. Hence, since the adoption proceeding was filed in the Juvenile Court prior to the filing of the instant suit, the only inquiry in the case is whether adoption proceedings filed under Act No. 154 of 1942 vest the Juvenile Courts with jurisdiction over the children sought to be adopted.
 

 We experience no difficulty in answering the query in the affirmative. By Section 52 of Article VII of the Constitution, as amended by Act No. 198 of 1938, the Juvenile Courts are vested with jurisdiction “ * * * in all adoption proceedings of children under seventeen years of age.” Act No. 154 of 1942 provides the procedure for the adoption of children and requires that the Department of Public Welfare, through the Commissioner, be served with a copy of the petition for adoption; that said Department of Public Welfare shall study the proposed adoption and submit a report to the Judge, setting forth its findings in regard thereto and that the Court shall set a time for the hearing of the adoption petition not less than 30 nor more than 60 days from the service of the petition. Section 4 of the
 
 *196
 
 statute provides that, when the Judge has received the report of the Department of Public Welfare, "he may enter an interlocutory decree awarding temporary custody.” Other sections of the Act refer to further proceedings in adoption cases and, specifically, the right of the court to revoke an interlocutory decree awarding custody; the effect of such decree; procedure for obtaining a final decree of adoption and kindred matters not important to the discussion at hand. A consideration of the provisions of the statute makes it evident that the Legislature intended that the Juvenile Courts were to be vested with jurisdiction with respect to the care and custody of the child sought to be adopted from and after the date on which the petition for adoption is filed and accepted by the court. Therefore, it follows that the Caddo Parish Juvenile Court acquired jurisdiction over the child, Allen Reed, on the date the Nugents filed their petition for adoption. The Commissioner of Public Welfare was made a party to that proceeding and the matter of the custody of the child was cognizable in the Juvenile Court. The subsequent action by the Commissioner of Public Welfare in applying to the First Judicial District Court for a writ of habeas corpus was wholly ineffectual as the child was al-. ready in custodia legis and subject to the orders of another tribunal.
 

 Our recent decision in State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163, is not in conflict with the views expressed herein. In the Simpson case, the mother of the child had placed her in the custody of a Mr. and Mrs. Salter. The Salters thereafter filed adoption proceedings in the Juvenile Court which were resisted by Mrs. Simpson, the mother of the child. Desirous of obtaining immediate possession of her child and unable to get speedy relief in the Juvenile Court, Mrs. Simpson sought a writ of habeas corpus in the civil district court. We sustained her right to do so on the theory that, since she had not surrendered the child in accordance with Act No. 91 of 1942, the adoption proceedings in the Juvenile Court became ineffectual without her consent. In other words, whereas the Juvenile Court acquired jurisdiction at the time the petition for adoption was filed, such jurisdiction was completely divested by the refusal of the mother to give her consent to the adoption of the child and a writ of habeas corpus in the district court for the recovery of the child was the proper remedy under the circumstances.
 

 The difference between the Simpson case and the instant one is apparent. There, although the jurisdiction of the Juvenile Court attached, it was subsequently divested by the refusal of the mother to give her consent to the adoption proceedings, or rather, the withdrawal by her of the consent previously given. Here, the mother is not in anywise involved. The issue is solely between a state agency and the per
 
 *197
 

 sons having
 
 actual possession of the infant Therefore, since the jurisdiction of the Juvenile Court was previously acquired and had not been relinquished, the attempt of the Commissioner of Public Welfare to divest that court of jurisdiction (respecting its right to determine where and in whose care the child should be placed as an incident to the adoption case) by application to the First Judicial District Court for a writ of habeas corpus was and is ineffective.
 

 The judgment appealed from is reversed and the suit dismissed.
 

 HAWTHORNE, J., concurs in the decree.