PONDER, Justice.
 

 On April 22, 1953 we granted writs with a stay order for the purpose of reviewing the ruling of the district judge wherein he rejected the 'relátrix’ plea of lis pendens. On the same day that the writs were granted the district judge entered a judgment of default in favor of respondent and signed the judgment on that same day. The relatrix applied for supplemental writs asking
 
 *1049
 
 this court to order the district judge to vacate and set aside the default judgment granted in favor of respondent. The writs were granted and both matters are now before us for review.
 

 The relatrix, Mrs. Virginia S. Marston, filed suit in the district court for the Parish of Orleans on June 10, 1952 for a divorce under the provisions of LSA-R.S.. 9:301. She alleged that she had been living separate and apart from her husband, the respondent, Randolph F. Marston, continuously for a period of two years and that the separation commenced on June 8, 1950. 'The respondent filed numerous exceptions to the suit and answered on March 20, 1953 alleging that the separation occurring on June 8, 1950 was not voluntary in its inception because the plaintiff did not have the requisite mental capacity to determine or form the intent to live separate and apart.
 

 On March 20, 1953, the same day that respondent answered the suit pending in the Civil District Court for the Parish of Orleans, he filed a suit in the First Judicial District Court for the Parish of Caddo for divorce under the provisions of La.R.S. '9:301 alleging that he and relatrix had been continuously living separate and apart for a period of two years and that the separation commenced on March 17, 1951. 'The relatrix interposed a plea of lis penmens to the suit filed in the district court of Caddo Parish alleging that the parties litigant in both actions were the same and that the proceedings grow out of the same cause of action, viz. a divorce on the ground that the spouses have lived separate and apart for a period of two years.
 

 On April 13, 1953, the District Judge for the Parish of Caddo overruled the plea of lis pendens and the attorney for the relatrix was informed that the respondent had filed a request for a default to be entered against relatrix on April 15, 1953. On April 14, 1953 relatrix’ attorney sent a telegram to the District Judge of Caddo Parish and the attorney for respondent notifying them that relatrix would immediately apply to the Supreme Court for writs and that the petition for writs would be filed on the following morning, April 15, 1953, at 9:00. a.m. with the Clerk of the Supreme Court. On the same day, April 14, 1953, relatrix’ attorney mailed formal notice of intention to apply for writs to the respondent judge and the attorney for the respondent. On April 15, 1953, the attorney for relatrix filed the application for writs in this Court, a copy of which was served on the attorney for respondent and the respondent judge. On April 16, 1953 attorney for respondent filed in this Court an opposition to the application for writs.
 

 The writs were granted on April 22, 1953 with a stay order and the respondent judge was notified on that date of this Court’s action. On the same day a judgment of divorce.by default was rendered in. fayor of respondent in the District Court in. Caddo Parish. Thereupon attorney for relatrix
 
 *1051
 
 filed a motion to vacate this judgment which the trial judge denied and the attorney for relatrix then applied to this Court for supplemental writs which were granted.
 

 The first question presented, which is raised in the supplemental writs, is whether or not notice of intention to apply for remedial writs stays all proceedings in the lower court pending the application to- this Court.
 

 In the Revised Rules of the Supreme Court of this State it is provided in Rule XIII, § 2, as follows:
 

 “The party or attorney intending to apply to this court for a writ of certiorari or review, or for any remedial writ, shall give to the judge whose ruling is complained of, and to the party made respondent, or parties made respondents, such notice as may be deemed necessary to stay further proceedings pending the application to the Supreme Court; * *
 

 This provision in our rules was properly interpreted in the case of Wilson Sporting Goods Co. v. Alwes, 204 La. 639, 644, 16 So.2d 217, 218, wherein this court stated:
 

 “The notice which relator gave to the trial judge and to the plaintiff’s attorney of its intention to apply for remedial writs was not effective for any other purpose than to stay all proceedings in the suit pending relator’s application to this court. Section 2 of the Rule (XIII), under- which the notice was given, so provides in plain words.” • '
 

 This interpretation of the rule has been generally recognized by the trial courts throughout the state and we were somewhat surprised when we were informed that the district judge took the position that the notice of intention to apply for remedial writs would.not stay the proceeding until this Court passed on the application. When the formal notice is given the applicant is entitled to a reasonable time to make his application to this Court for the remedial writs. The reasonable time is-governed by the circumstances of each particular case to be fixed by the trial judge in his discretion.
 

 The respondent relies on a statement made in the opinion handed down in the case of First National Bank Building Company Limited v. Dickson & Denny 202 La. 970, 980, 13 So.2d 283, 286, viz.:
 

 “Clearly, therefore, mere notice to the district judge of a litigant’s intention to apply for writs does not have the effect of staying further proceedings in that court.”
 

 Section 2 of Rule XIII was not considered in that case and the statement cannot be regarded as an interpretation of this section of the rule. The statement cannot be reconciled with the plain words of Section 2 of Rule XIII. In order to leave no-room for doubt we reiterate that the formal notice of intention to apply for remedial writs stays all proceedings in the lower court for a reasonable time sufficient to-
 
 *1053
 
 afford the applicant an opportunity to make his application to this Court.
 

 The second question presented for ,our consideration is raised in the original application for writs, viz.: the overruling of the plea of lis pendens. Under Article 94 of the Code of Practice dealing with lis pen-dens it is provided:
 

 “The same cause can not be brought before the same or separate courts, though they be possessed of concurrent jurisdiction, except by discontinuing the suit first brought before the answer is filed. The judge before whom the action is first brought shall sustain his jurisdiction, and the defendant shall be entitled to have the cause dismissed in the other suit or by the other court, and to recover costs. * *
 

 It is well settled that the pleas of res judicata and lis pendens bear a strong analogy and that a fair test of lis pendens is to'inquire whether a final judgment in the former suit would be res judicata in the latter, if it would then the exception of lis pendens is well pleaded. Dick v. Gilmer, 4 La.Ann. 520; Bischoff v. Theurer, 8 La.Ann. 15; Exchange National Bank v. Holoman Bros., 177 La. 537, 148 So. 702.
 

 It is stated in Dick v. Gilmer, supra, a land mark case, viz.:
 

 “There is a strong analogy between the pleas of res judicata and litispendence; and it is a fair test * * * to enquire whether, if there were final judgment in the former suit, such judgment would support the plea of res judicata in this. Exceptioni rei judicatae affinis admodum est exceptio litis pendentis. Voet, De Exceptionibus.
 

 “The exception of litispendence rests on a wise public policy. Were it not recognized by the law, the consequences, as is well remarked by Merlin, would be not less absurd than dangerous. Suits might be indefinitely multiplied, and the citizen would be exposed to the expense and annoyance of several attacks, at the same time, for the same matter. The simplicity and uniformity which should reign in the administration of justice, might be-superseded by the confusion and contradiction of different proceedings and judgments upon the same subject.”
 

 It is also well settled that when two courts have concurrent jurisdiction over the same subject matter, the court- which first obtains jurisdiction and possession 'of the res retains it to the end of the controversy to the exclusion of all others. Demoruelle v. Allen, 218 La. 603, 50 So.2d 208; State ex rel. Terry v. Nugent, 212 La. 382, 31 So.2d 834; Geilinger and Blum v. Philippi, 133 U.S. 246, 10 S.Ct. 266, 33 L.Ed. 614; Lake Bisteneau Lumber, Co. v. Mimms, 49 La.Ann. 1283, 22 So. 730 and cases cited therein.
 

 LSA-Revised Statutes 9:301 reads as follows:
 

 
 *1055
 
 “When married persons have been living separate and apart for a period of two years or more, either party to the marriage contract may sue, in the courts of his or her residence within this state, provided such residence shall have been continuous for the period of two years, for an absolute divorce, which shall be granted on proof of the continuous living separate and apart of the spouses, during the period of two years or more.”
 

 This provision of the LSA-Revised Statutes sets forth only one cause of action. It provides that a divorce shall be granted on proof of the continuous living separate and apart of the spouses for a period of two years or more. If the spouses had lived separate and apart for a period of more than six years it would not constitute three causes of action nor would the allegation that the separation took place at a different time create another cause of action. The essence of the statute is that the spouses must live separate and apart for a period of two years or more. Upon proof of this fact the court must grant the divorce because the statute is mandatory.
 

 The respondent relies on a statement made in the case of McCubbin v. McCubbin, 163 La. 20, 111 So. 481 indicating that suits -for divorce on the ground of two year separation filed on separate dates were considered separate causes of action. These statements were not necessary to the decision in that case because the question involved therein was whether or not -a judgment dismissing a suit for divorce on these grounds was res judicata. Clearly such a judgment is not res judicata because it does not settle the controversy. It is no more than the dismissal of a premature suit. In other words, the court has no discretion but must grant the divorce if it is proven that the spouses have lived separate and apart for two' years or more. Failure to prove this fact would necessarily result in the dismissal of the suit because the cause of action had not matured. If the cause of action has matured, there is only one judgment that could be rendered, viz.: judgment of divorce and such judgment would be res judicata to any subsequent suit under this statute.
 

 To interpret this statute otherwise would bring about confusion and unnecessary hardship. The plea of lis pendens is. well taken.
 

 For the reasons assigned, the writs are made peremptory and both judgments of the lower court are reversed and set aside and the suit is therefore dismissed. All costs to be paid by the respondent, Randolph F. Marston.
 

 PER CURIAM.
 

 In his application, counsel for respondent contend that a rehearing should be granted in this case to correct obvious errors, two in particular being (1) an inference contained in the opinion which appears to.
 
 *1057
 
 cast reflection on the respondent judge, when we said he had been notified on the date the writs were granted (April 22, 1953), when in fact notice was received by respondent’s attorney on April 23, and by the judge not until April 27, due to his absence from the city; and (2) the danger of our ruling that “formal notice of intention to apply for remedial writs stays all proceedings in the lower court for a reasonable time sufficient to afford the applicant an opportunity to make his application to this Court,” in that it- will be used by unscrupulous lawyers to delay proceedings at any time by the mere giving of a notice of intention to make application for writs.
 

 As to the first point raised, we did not intend to cast any reflection on the trial-judge; moreover, it is immaterial whether he had actually received notice that writs had issued, since it is not disputed that on the day following his ruling on the plea of lis pendens (April 13, 1953), he was notified by telegram and by formal mailed notice that relatrix would immediately apply to the Supreme Court for writs, the petition to he filed on the following morning, and on the succeeding day (April 15), the application for writs was actually filed in this Court, a copy thereof being served on respondent’s attorney' and the respondent judge.
 

 With respect to the second alleged error, we cannot concur with counsel that our ruling may invite such consequences. The ’ trial c'oürt has power to'fix a time limit, reasonable in extent, within which such application should be 'filed, before proceeding further with the case. The arbitrary setting of a time limit is not practicable, since the period required may vary from one day to several days due to the nature of the case and is best left to the court’s discretion. Should abuses arise, and a further clarification of the rules he necessary, this can be undertaken when indicated.
 

 We find no merit in other alleged errors, and the rehearing is refused.