[No. 32645. Department One. February 15, 1954.]

RUTH J. PETERS, *as Executrix, Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

[1]Reported in 266 P. (2d) 789.

*A. C. Van Soelen* and *Arthur Schramm,* for appellant.

*Erle W. Horswill* (of *Kahin, Carmody & Horswill*), for respondent.

OLSON, J.—This is an appeal by defendant, from a judgment entered upon a verdict for plaintiff in an action for wrongful death. Error is assigned to the denial of defendant's demurrer to the evidence at the close of all the testimony, and of its motion for judgment notwithstanding the verdict. Defendant contends that the evidence fails to establish its negligence and does establish the contributory negligence of plaintiff's decedent, as a matter of law.

Interpreting the evidence and all reasonable inferences from it most favorably to plaintiff, and most strongly against defendant, as we are obliged to do, the jury could have found the following facts:

Sixteenth avenue south is a four-lane paved street running north and south in the city of Seattle. During morning rush hours, it is marked to allow three lanes of northbound traffic and only one lane of southbound vehicles. There is a marked crosswalk about twenty-three feet wide, crossing Sixteenth avenue south in front of Boeing plant No. 2.

June 26, 1952, about 7:15 a. m., decedent and twenty or thirty other Boeing employees were standing on the curb on the west side of this crosswalk, waiting to cross the street. Decedent was near the south margin of the crossing. A Boeing guard, who was a special deputy sheriff, was directing traffic at the crossing. He was standing on the east curb of the street when he blew his whistle to stop vehicular traffic, and stepped off the curb. The vehicles in the three lanes for northbound traffic stopped, and he proceeded across the street to the southbound lane. He was facing north, with his arms outstretched. He had been there several seconds when a southbound city transit system bus drove over the crosswalk, moving at a speed estimated to be from ten to thirty miles an hour. Some of the pedestrians waiting at the curb on decedent's left, and between him and the bus, had started to cross the street. All of them but one jumped back safely. This one, a woman,

struck the side of the bus. Decedent collided with the right front corner of the bus, on the rear frame of the door for the admission and discharge of passengers. He was thrown into a telephone pole which was a few feet from the curb, and suffered fatal injuries. He had barely left the curb when the collision occurred; probably while he was taking his first step.

When the guard left the east curb, the bus was stopped to discharge passengers about seventy feet north of the crosswalk. This guard was not always assigned to this crosswalk, and there is evidence that the guards used different signals in directing traffic. The extension of the guard's arms was used and understood by some pedestrians as a signal for them to cross the street.

The driver of the bus testified that: he did not see the guard before driving through the crosswalk, knew of the crosswalk, and was driving very near the west curb, watching the pedestrians on that (decedent's) side of the street. He did not sound his horn. Several pedestrians "surged" into the crosswalk as he entered it. Whether or not his conduct was negligent under the described circumstances, was for the jury upon at least one of the submitted issues of negligence, failure to "sound his horn or otherwise act to avoid the accident, when he knew or should have known he was approaching a situation of danger."

Upon the question of the contributory negligence of decedent as a matter of law, defendant relies upon two rules expressed in *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784 (1925) to sustain its position. The first of these is that a person will not be heard to say that he looked and did not see an object which was plainly visible. The second is that a pedestrian who steps from a curb or other place of safety directly into an approaching vehicle, is negligent as a matter of law. It is argued that decedent had a clear view of the bus and would have seen it had he looked; that he was looking to his right as he left the curb, rather than in the direction from which the bus or other traffic would come in the southbound lane next to the curb; that he stepped into the side of the bus from a place of safety; and that all of

his movements were observed by witnesses who testified regarding them at the trial, leaving no room for a presumption that he used due care.

Plaintiff refutes this argument by contending that, while there is a duty to make some observation of traffic at a reasonable time before one steps off the curb at an uncontrolled crosswalk, the same duty is not imposed upon a pedestrian at a controlled crosswalk like the one in the case at bar; that, in the latter instance, the pedestrian has a right to enter the intersection when the control so indicates, and to proceed across it, and to presume that traffic from both directions will obey the control and not interfere with his progress, citing *Lubliner v. Ruge,* 21 Wn. (2d) 881, 889, 153 P. (2d) 694 (1944), and cases cited, and *Mathews v. Lord Electric Co.,* 30 Wn. (2d) 794, 808, 194 P. (2d) 379 (1948).

We agree that the crosswalk in the case at bar is a controlled crosswalk. The following language from the case last cited is applicable (p. 808):

"We do not wish to be understood as holding that a pedestrian, proceeding with the green light at an intersection where automatic signals are provided, may blithely enter the intersection without due regard for his own safety. But the question of whether or not he exercised such care, is ordinarily one of fact and not of law. The conduct of an ordinarily prudent person under such circumstances must be largely determined by the condition of the traffic at the particular time and place in question, and the rights and duties of both the driver of the automobile and the pedestrian."

The following questions of fact, among others, appear in the case at bar. Had the guard given a signal which decedent reasonably could believe indicated that he could enter the crosswalk and proceed across it safely? Other pedestrians to the left of decedent and nearer to the bus than he was, and who were waiting to cross, did proceed or were ready to do so. Considering that the bus was observable and observed, while discharging passengers some distance north of the crosswalk, when the guard left the east curb, and that it had not appeared while the guard

crossed three traffic lanes, would a reasonable man, under the circumstances and conditions then prevailing, look for it again before leaving the west curb? Had decedent looked for southbound traffic when the guard left the east curb, he would have seen none. He was not required to look at the precise moment he left the curb, but at such a time and place as reasonably would protect him under the circumstances. See *Kuhnhausen v. Woodbeck*, 2 Wn. (2d) 338, 349, 97 P. (2d) 1099 (1940), and case cited, p. 348.

These are questions upon which reasonable minds, considering the circumstances and conditions prevailing at the time and place in question, can reach different conclusions. They are proper questions for a jury. The answer reached by the jury, as it was in this case, under instructions unchallenged on this appeal, and being supported by evidence and reasonable inferences from the evidence, is not subject to change by the trial court or by this court.

The judgment is affirmed.

GRADY, C. J., MALLERY, HAMLEY, and FINLEY, JJ., concur.