195 So.2d 771 (1967)
Richard L. LUCAS, Plaintiff-Appellant,
v.
Maria Medina LUCAS, Defendant-Appellee.
No. 1801.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1966.
On Rehearing February 15, 1967.
Rehearing Denied March 8, 1967.
Writ Refused April 14, 1967.
*773 Stagg, Cady & Beard, by William M. Cady, III, Shreveport, for plaintiff-appellant.
Love, Rigby & Donovan, by Kenneth Rigby, Shreveport, for defendant-appellee.
Before FRUGE, SAVOY and CULPEPPER, JJ.
FRUGE, Judge.
Mrs. Maria Lucas on March 25, 1963, obtained a judgment of divorce from her husband, Richard Lucas, in the First Judicial District Court, Caddo Parish, Louisiana. In that suit the trial judge awarded the custody of the two minor children of the marriage, Richard Danied Lucas and George Luis Lucas, to the mother, Mrs. Lucas. Soon after the divorce was granted Mrs. Lucas moved to Mexico City, Mexico, accompanied by her two minor children. Mr. Lucas thereafter traveled to Mexico City and brought the children back to Louisiana with him. The judgment awarding custody of the children to Mrs. Lucas was amended by consent of the parties on October 15, 1964, and the amended judgment provided:
"That the aforesaid children who are now in the physical care, custody and control of Mr. Lucas are temporarily awarded to his custody until June 1, 1965, at which time the judgment previously rendered herein on March 12, 1963, and read, signed and filed on March 25, 1963, shall immediately become effective as if this judgment had not been rendered.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that should the parties hereto not agree on the custody arrangement prior to August 1, 1965, and enter into a judgment accordingly, that this court, as an express condition hereof, does and shall retain jurisdiction over the parties hereto to adjudicate and determine proper custody of these minors."
On or about June 1, 1965, Mr. Lucas returned the children to Mexico City pursuant to the modified custody agreement above. Upon returning to Louisiana, Mr. Lucas filed a rule in the First Judicial District Court, Caddo Parish, Louisiana, seeking another modification of the custody judgment and a permanent award of the custody of the children. Through her attorney, Mrs. Lucas filed a declinatory exception to the jurisdiction of the First Judicial District Court, alleging that the court had no power to alter the custody order to her prejudice since she and the two children were domiciliaries of Mexico City, Mexico, and were not physically present in the State of Louisiana. On the authority of Nowlin v. McGee, 180 So.2d 72 (La.App. 2 Cir., 1965), certiorari denied, 248 La. 527, 180 So.2d 541, the trial judge sustained the declinatory exception to the jurisdiction. Thereafter, Mr. Lucas, allegedly without the consent or permission of Mrs. Lucas, traveled to Mexico City in a private airplane, retrieved the children and brought them back to Alexandria, Louisiana. Mr. Lucas then filed the present suit in the Ninth Judicial District Court for the Parish of Rapides, seeking a judgment awarding the custody of the two children to him. Mrs. Lucas, again through her attorney, filed exceptions of res judicata, lack of jurisdiction over the subject matter, improper venue, lis pendens and, alernatively, a motion for a change of venue. The district court sustained the exceptions to the jurisdiction, holding that if any court of the State of Louisiana had jurisdiction, then it was the First Judicial District Court in the Parish of Caddo, which rendered the original divorce and *774 custody judgment. Mr. Lucas has appealed, urging that the trial court erred in failing to hold that (1) the courts of Louisiana have jurisdiction to determine the custody of children physically before the court regardless of the fact that the children may have entered the state unlawfully or without the permission of the lawful custodian, and (2) that the Ninth Judicial Court for the Parish of Rapides is a proper court to determine the custody of the two children in this case.
This appeal presents two issues for our determination:
First, may the courts of the State of Louisiana, under the doctrine of parens patriae, adjudicate the status of children physically present within the state even though the spouse originally awarded custody is outside the state and the children are brought into or retained within the state in contravention of the wishes of the custodian-spouse?
Second, assuming that the courts of Louisiana have jurisdiction over the status of such children, is the court which rendered the judgment of divorce and the original order of custody the only court competent to entertain a subsequent suit to redetermine the custody of the children?
Although there are divergent lines of authority, the trend of decisions throughout the United States seems to be toward assuming jurisdiction over the status of minor children physically within the jurisdiction of the court regardless of the manner in which the children were brought within the confines of the state. See Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187, (1949); In re Smith's Guardianship, 147 Cal.App.2d 686, 306 P.2d 86 (1956); DiGiorgio v. DiGiorgio, 153 Fla. 24, 13 So.2d 596 (1943); Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, and the annotation at 4 A.L.R.2d 1.
In Louisiana the power of our courts to adjudicate the custody of minor children is regulated by Code of Civil Procedure Article 10, Section 5, which provides:
"A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:
* * * * * *
"(5) A proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state;
"* * *."
In the case of State ex rel. Girtman v. Ricketson et ux., 221 La. 691, 60 So.2d 88 (1952), our Supreme Court had this to say with regard to the jurisdictional requirements of domicile and physical presence:
"There is no doubt but that once the legal domicile of the child has been established by the court of one state, the question of his custody can be re-examined by that court if any changes in his condition present themselves and a change of custody is found necessary for his best interest and welfare. That does not mean however that if by reason of some circumstance, the child is found in a State other than that of such domicile, in custody of one of the parents, such as is the child in this case, the courts of that State do not have jurisdiction to make the same sort of investigation regarding any changes of conditions which may lead to a change of custody for his better welfare. The court, no matter of which State, having his person before it, has the right, and even the duty according to some cases, under the doctrine of parens patriae, to act for the best interest of the child. The basic principle on which jurisdiction is assumed in such cases is the welfare of society in general and primarily as evidenced by the welfare of the child. See Wicks v. Cox, supra, and Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 40 A.L.R. 937."
*775 The Girtman case was decided prior to the adoption of the Code of Civil Procedure but the specific language of Article 10, Section 5, codifies the principle expressed in the Girtman case that the mere physical presence of children within the boundaries of the state is sufficient grounds for a Louisiana court to exercise jurisdiction over the status of those children. Accordingly, we are of the opinion that a Louisiana court has the power and authority to modify the award of the custody of the Lucas children, even assuming that the children were brought into the State without the consent or knowledge of Mrs. Lucas.
Having decided that the courts of Louisiana are competent to entertain this suit, we are faced with the problem of determining which court within the state is the proper forum to hear and decide the matter of the custody of these children. The appellant, Mr. Lucas, contends that since the children are physically present within the Parish of Rapides, then the district court of that parish is a proper court in which to bring a custody suit. On the other hand, Mrs. Lucas, the appellee, maintains that the First Judicial District Court, Caddo Parish, is the only court in which this suit may be maintained since both the judgment which dissolved the marriage and the judgment awarding custody of the children to the mother issued from that court.
Although our research discloses no case exactly in point, we feel that the principle announced in State ex rel. Marston v. Marston, 223 La. 1046, 67 So.2d 587 (1953), is applicable to the facts at bar and requires that the present suit be brought in the Parish of Caddo. In that case the Supreme Court said:
"It is also well settled that when two courts have concurrent jurisdiction over the same subject matter, the court which first obtains jurisdiction and possession of the res retains it to the end of the controversy to the exclusion of all others. Demoruelle v. Allen, 218 La. 603, 50. So.2d 208; State ex rel. Terry v. Nugent, 212 La. 382, 31 So.2d 834; Geilinger and Blum v. Philippi, 133 U.S. 246, 10 S.Ct. 266, 33 L.Ed. 614; Lake Bisteneau Lumber Co. v. Mimms, 49 La.Ann. 1283, 22 So. 730 and cases cited therein."
The trial judge expressed the same view, relying on State ex rel. Paul v. Department of Welfare, 166 So.2d 7 (La.App. 3 Cir., 1964). See also State ex rel. Terry v. Nugent et ux., 212 La. 382, 31 So.2d 834; Wheeler v. Wheeler, 184 La. 689, 167 So. 191 (1936); and Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953).
The appellant argues earnestly that he should not be required to bring his suit in the First Judicial District Court of the Parish of Caddo since that court, in a prior suit, declined to exercise jurisdiction. Under the circumstances that existed at that time we feel that the ruling of the Caddo Parish court was entirely proper since the Lucas children were neither domiciliaries of the State of Louisiana nor physically present within its boundaries. But, as we indicated earlier in this opinion, the physical presence of the children within the State now gives the courts of Louisiana jurisdiction over their status and for this reason we feel that the First Judicial District Court of the Parish of Caddo is the proper court to rule on the custody of these children.
For the foregoing reasons the judgment of the Ninth Judicial District Court, Parish of Rapides, sustaining the declinatory exception of lack of jurisdiction is affirmed, the costs of this appeal to be borne by the appellant.
Affirmed.
CULPEPPER, Judge (dissenting).
I do not concede that the First Judicial District Court for the Parish of Caddo has concurrent jurisdiction with the Ninth Judicial District Court for the Parish of Rapides over the status, i. e., the legal custody, of these minor children. Counsel for the plaintiff makes a very strong argument that *776 the jurisdiction of the Caddo Parish court has terminated because the mother moved to Mexico and took the children with her, at which time the Caddo Parish court unquestionably lost its jurisdiction under the holding in Nowlin v. McGee, 180 So.2d 72 (La.App., 2nd Cir.1965, certiorari denied 248 La. 527, 180 So.2d 541). Furthermore, there is no action presently pending in the Caddo Parish court regarding the custody of these children. Hence, that court has not retaken jurisdiction and there is no danger of a collision between conflicting judgments of the two courts, as was the situation in the cases relied on by the majority.
However, regardless of whether the two courts have concurrent jurisdiction, I think the defendant has waived whatever rights she had to object to the jurisdiction of the Rapides Parish court. As the majority opinion states, Mrs. Lucas employed her own attorney and filed in the Rapides Parish court not only a declinatory exception to the jurisdiction, but a peremptory exception of res judicata (based on the prior custody judgment rendered in the Caddo Parish court). In my view, the filling of the peremptory exception of res judicata constituted a general appearance, waiving whatever objections Mrs. Lucas can make to the jurisdiction of the Rapides Parish court.
I recognize that jurisdiction over the subject matter cannot be waived or conferred by consent, LSA-C.C.P. Article 3; nor can jurisdiction over status, LSA-C.C.P. Article 10, Douglas v. Douglas, 146 So.2d 227 (La.App., 3rd Cir.1962). However, if a court has jurisdiction of the subject matter, any objection which the defendant has to jurisdiction over the person may be waived, LSA-C.C.P. Articles 6 and 7, Walker v. Walker, 157 So.2d 476 (La.App., 3rd Cir. 1963, reversed in part on other grounds, 246 La. 407, 165 So.2d 5).
LSA-C.C.P. Article 7 provides:
"Except as otherwise provided in this article, a party makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than:
"(1) Entry or removal of the name of an attorney as counsel of record;
(2) Extension of time within which to plead;
(3) Security for costs;
(4) Dissolution of an attachment issued on the ground of the nonresidence of the defendant; or
(5) Dismissal of the action on the ground that the court has no jurisdiction over the defendant.
"This article does not apply to an incompetent defendant who attempts to appear personally, or to an absent or incompetent defendant who appears through the attorney at law appointed by the court to represent him.
"When a defendant files a declinatory exception which includes a prayer for the dismissal of the action on the ground that the court has no jurisdiction over him, the pleading of other objections therein, the filing of the dilatory exception therewith, or the filing of the peremptory exception or an answer therewith when required by law, does not constitute a general appearance."
As I understand the scheme of Article 7 quoted above, it first lists the five types of relief which a party can seek without subjecting himself to personal jurisdiction of the court. The peremptory exception is not one of the five listed reliefs. It could easily have been listed as number (6) if the lawmarkers so intended. Then the last two unnumbered paragraphs set forth the exception to Article 7. Unless defendant in the present case falls within one of these exceptions, she has made a general appearance and waived any objection to the jurisdiction of the court of Rapides Parish.
The only possible argument, that defendant is excepted from the provisions of Article *777 7, is that the last paragraph thereof provides "the filing of the peremptory exception or an answer therewith when required by law, does not constitute a general appearance." I interpret this last quoted provision to mean that if the law requires the peremptory exception or the answer to be filed at the same time as the declinatory exception to the jurisdiction, then the filing of these exceptions at the same time will not constitute a general appearance. I have found only one example of this and that is under the rules of certain city courts the defendant must file all of his pleadings at the same time. However, there is certainly no requirement of law that the peremptory exception of res judicata in this case had to be filed at the same time as the declinatory exception to the jurisdiction of the court.
There can be no question that the Ninth Judicial District Court for the Parish of Rapides has jurisdiction over the subject matter, which in this case is the status of these children, under the clear provisions of LSA-C.C.P. Article 10(5) which states that a court of this state has jurisdiction of a proceeding to obtain the legal custody of a minor if "he is domiciled in, or is in, this state;". The only reason suggested by the majority opinion for denying jurisdiction to the Rapides Parish court is that the Caddo Parish court has concurrent jurisdiction, which it obtained first and therefore retains to the exclusion of all other courts. I think the defendant has waived her rights to object to the Rapides court's jurisdiction on this ground. There is no action presently pending in Caddo Parish regarding custody of these children. Hence there is no danger of a collision between conflicting judgments of the two courts and this is the principal reason for the rule. Defendant has consented to have the matter determined in Rapides Parish. This was her personal choice by which she is estopped to object to the Rapides court's jurisdiction.
There is some discussion of venue in the briefs filed by counsel. Venue means the parish where an action may be brought, LSA-C.C.P. Article 41. All counsel agree there is no codal article governing venue of custody proceedings generally, such as this. As a general rule, the venue is in the parish where the defendant is domiciled, or the subject matter is located, or where the cause of action, such as an accident, arose, LSA-C.C.P. Article 42. The defendant in the present case is an absentee, domiciled in Mexico, so this rule does not indicate a Caddo venue. The subject matter of this case, i. e., the children, are located in Rapides Parish, which would favor venue in Rapides. If venue is an issue in this case, the general rules thereof certainly favor Rapides Parish. However, all counsel appear to agree the substantial issue is whether Caddo Parish has retained jurisdiction by virtue of the previous custody proceedings in that court.
I recognize there are many policy arguments which can be made for both courts. Caddo Parish heard the original divorce proceedings and the evidence and arguments concerning the custody of the children. It is therefore more familiar with the background of the case than the Rapides Parish court. But this alone is not sufficient reason to say Caddo Parish shall forever retain exclusive jurisdiction over the custody of these children. For instance, if the mother had moved back to Louisiana to Rapides Parish with the children, could there be any question that Rapides Parish would then have jurisdiction, despite the previous proceedings in Caddo Parish. Also, suppose the father had found the children detained by the mother, or some other party, in Rapides Parish, and had filed habeas corpus proceedings there. That court could have entertained such proceedings under the clear provisions of LSA-C.C.P. Article 3822 which provides: "Habeas corpus proceedings may be brought in the parish in which the defendant is domiciled or the parish in which the person detained is in custody."
On the other hand, there are many policy arguments that Rapides Parish should have jurisdiction of these proceedings. These *778 children are now in Rapides Parish at the domicile of the plaintiff. One of the important issues will be the nature of the care and maintenance which he is now providing. As to the circumstances of the mother's care, this was in Mexico, where defendant is domiciled. The Caddo Parish court cannot know any more about the circumstances of the mother's care in Mexico than the Rapides Parish court.
Nevertheless, I do not base my dissent on any of these policy arguments. As stated above, it is my view that Mrs. Lucas has waived whatever right she had to object to the jurisdiction of the Rapides Parish court by appearing therein and filing the peremptory exception of res judicata. Also, there is no statutory rule to deny Rapides Parish jurisdiction, and no logical reason to do so.
For the reasons stated, I respectfully dissent.

On Application for Rehearing En banc.
CULPEPPER, Judge.
On rehearing, all members of this court agree that, for the reasons stated in our original opinion, the courts of Louisiana have jurisdiction over the status of these children, even though they were brought to Louisiana from Mexico without the mother's consent.
However, a majority of this court is now of the opinion that the Caddo Parish court, which rendered the original custody decree in the divorce proceedings, did not retain forever the exclusive jurisdiction and venue to modify that decree. This question is res nova in Louisiana.
At the outset, it is appropriate to state that all counsel agree we have no statute which supplies the answer. LSA-C.C.P. Article 10(5), provides only that the courts of Louisiana have jurisdiction over the custody of minors by virtue of their being domiciled in or physically in this state. Of course, the jurisdiction spoken of here is interstate, not intrastate, and does not apply to questions of the proper parish for the action. The particular parish, where the proceedings may be brought and tried, is a question of venue. LSA-C.C.P. Article 41.
Likewise, the venue article, LSA-C.C.P. Article 41-122, supply no answer. Where the custody issue is incidental to a separation or divorce proceedings, the venue is determined by the articles applicable to the principal demand. However, where, as here, an independent action has been filed for custody, there is no codal article which specifically provides the venue. The general rules of venue apply.
Counsel for Mrs. Lucas cites several cases from which he argues it must be inferred that only the court that rendered the custody judgment has the jurisdiction to modify it "from an intrastate point of view". He cites first, State ex rel. Marston v. Marston, 223 La. 1046, 67 So.2d 587 (1953), for the general rule that where two courts have concurrent jurisdiction over the same subject matter, the court which first obtains jurisdiction of the res, retains it to the end of the controversy, to the exclusion of all others. But, the Marston case is readily distinguishable from the present matter. There, the wife filed suit for separation from bed and board in Orleans Parish and while her suit was pending the husband filed a suit for separation from bed and board in Caddo Parish. The court held that since the Orleans court obtained jurisdiction first, it retained jurisdiction to the end of the controversy. The wife's exception of lis pendens was accordingly sustained. In the present case, unlike the Marston case, there are no proceedings presently pending in the Caddo Parish court respecting the custody of these children. The custody proceedings in Caddo were concluded and judgment rendered on the facts existing at the time. And, although that custody decree may be subsequently modified, on a showing that changed circumstances require it, there can be no collision *779 between conflicting judgments of courts of concurrent jurisdiction, which, after all, is the basic rationale of the rule expressed in the Marston case.
Counsel for Mrs. Lucas also cites State ex rel. Terry v. Nugent, 212 La. 382, 31 So. 2d 834 (1947) where an adoption proceedings was pending in a juvenile court at the time a custody proceedings was filed in the district court; and State ex rel. Paul v. Department of Welfare, 166 So.2d 7 (La.App., 3rd Cir. 1964) also involving concurrent proceedings in a juvenile court and a district court. These cases are certainly correct, but are also distinguishable from the present matter on the grounds that they involved concurrent proceedings in different courts regarding custody of the same children. That is not the case here.
Defense counsel relies heavily on Pullen v. Pullen, 161 La. 721, 109 So. 400 (1926). There, a divorce proceedings in DeSoto Parish resulted in a custody award of three of the five children to the father. The father moved to New Orleans but did not take the three children with him. The mother remained in DeSoto Parish and took care of these children. Two years later the mother petitioned the DeSoto Parish court to change the previous custody decree to award her custody, alleging that the father was threatening to take the children from her. The father filed exceptions to the jurisdiction ratione personae and ratione materia. Our Supreme Court held that the DeSoto Parish court retained jurisdiction to modify its former custody decree. But, the Pullen case did not hold, since the issue was not raised, that DeSoto Parish retained exclusive jurisdiction. The question as to whether an independent action to change custody, on the grounds of a change in circumstances, can be brought in a different parish, under a new venue, was not presented. We notice particularly that no questions of venue were raised.
Another principle established by our jurisprudence is that where the matter of custody was not at issue in the original divorce proceedings, and the judgment made no mention thereof, a subsequent demand for custody of the children must be brought in an independent action, rather than in the divorce proceedings. Thornton v. Floyd, 229 La. 237, 85 So.2d 499; Thornton v. Thornton, 234 La. 108, 99 So.2d 43 (1958); McLin v. McLin, 130 So.2d 748 (La.App., 1st Cir.); Thibodeaux v. Roscoe, 182 So. 2d 77 (La.App., 3rd Cir. 1966). Although these cases are not controlling here, they do show that independent actions for custody of children of divorced parents, have long been a part of our practice.
A review of the jurisprudence of other states reveals a lack of uniformity as to the issue at hand. Although the annotation in 146 A.L.R. 1153, at page 1168, indicates the general rule at the time was that the court which renders a custody order is the only court in the state which can modify it, there are many later cases to the contrary. See 27B C.J.S. Verbo Divorce, § 317(3), pp. 558-561; and 24 Am.Jur.2d 926, Verbo Divorce and Separation, Section 814. In our sister state of Texas it is provided by statute that an action to change a former custody decree must be brought by a new and independent suit, which of course might have a new venue. See Lakey v. McCarroll, 134 Tex. 191, 134 S.W.2d 1016 (1940); Ex parte Webb, 153 Tex. 234, 266 S.W.2d 855 (Tex.S.Ct.1954) and cases cited therein. Other cases to the same effect, whether based on statutes or jurisprudence, are: Pirkle v. Pirkle, 212 Ga. 752, 95 S.E.2d 663 (1956); Damm v. Damm, 77 R.I. 24, 72 A. 2d 839; State ex rel. Maureman v. Superior Court, 44 Wash.2d 228, 271 P.2d 435; Cooney v. Cooney, 25 Cal.2d 202, 153 P.2d 334.
It is our view that a strict adherence to the rule, that the court which renders a custody decree retains exclusive jurisdiction and venue of any action to modify that decree, is objectionable on several grounds: It would work undue hardship where the parties move to a far distant parish and would be faced with the *780 necessity of transporting themselves, their lawyers and witnesses back to the parish which rendered the original custody order. The issue in an action to change custody is whether there has been any change in circumstances which requires, for the best interests of the children, that the previous custody decree be changed. Decker v. Landry, 227 La. 603, 80 So.2d 91. This involves an inquiry into whether the conditions under which the children are presently living are detrimental and whether the applicant can and will provide a good home for them. In most instances, these facts can best be determined by the court of the parish to which the parents and the children have moved. Usually, the witnesses are friends, neighbors, preachers, teachers, officers of the law, physicians and others who know the living conditions of the children and the parents. The judge of the court where these people live will be far better qualified to evaluate their testimony. Also, the house and the neighborhood where the children live is often a factor; and the local judge would know more about this, or could easily go and inspect it. Furthermore, as a general rule, the court where the child is domiciled, or is physically present, is best qualified to determine, and most concerned with, the best interests of the child. This is basically the rationale of the "parens patriae" theory of LSA-C.C.P. Article 10(5), which gives our courts jurisdiction of custody of a minor who "is domiciled in, or is in, this state."
Having reached a decision on this basic issue, we can proceed fairly easily to the conclusion that Rapides Parish has jurisdiction and venue in the present case. If Caddo Parish has not retained exclusive jurisdiction to modify its decree, then Rapides Parish has jurisdiction of this independent action to change the custody, simply because the children are physically present in this state. LSA-C.C.P. Article 10(5).
Since this is an independent action, not filed in the original divorce proceedings, it can have a new venue. The pertinent portion of LSA-C.C.P. Article 42 provides:
"The general rules of venue are that an action against:
* * * * * *
"(5) Except as otherwise provided by R.S. 13:3471(1), a foreign corporation not licensed to do business in the state, or a nonresident who has not appointed an agent for the service of process in the manner provided by law, other than a foreign or alien insurer, shall be brought in a parish where the process may be, and subsequently is, served on the defendant; "

The Official Comments under Article 42 provide in pertinent part:
"(d) Heretofore, nonresident individuals could be sued where service could be made, whether or not they had appointed agents. The above article restricts the venue as to nonresident individuals who have appointed agents. Otherwise, there is no change as to nonresident individuals."
LSA-C.C.P. Article 5091, as applicable here, provides:
"The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
"(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is: (a) a nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has made no general appearance; * * *."
LSA-C.C.P. Vol. 3, page 501, Chapter 2, Service on Persons, Caveats (2) gives this explanation:
"2. When the court has jurisdiction over the property, or over the status involved, a nonresident defendant may be served through the attorney at law appointed *781 by the court to represent him. Arts. 5091, 5251(1, 11)."
Applying these codal articles to the present case, it is clear that the defendant, Mrs. Lucas, is a nonresident (her domicile is in Mexico) who has not appointed an agent for service of process. Hence venue of a suit against her is where proper service is made. Since the court has jurisdiction over the status involved, i.e., the custody of these children, an attorney at law was properly appointed to represent her and service of process was made on him in Rapides Parish.
It is our conclusion that the district court of Rapides Parish has jurisdiction over the status involved and that it also is a court of proper venue in these proceedings. Hence, the exception to the jurisdiction, as well as the exception to venue, must be overruled.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Richard L. Lucas, and against the defendant, Maria Medina Lucas, overruling the defendant's declinatory exceptions to the jurisdiction and venue of the court. This case is remanded to the district court for further proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed against the defendant, Mrs. Maria Medina Lucas. Costs of the lower court may be assessed on completion of the proceedings there.
Reversed and remanded.
FRUGE, J., dissents for the reasons assigned upon original opinion.
HOOD, J., dissents for the reasons assigned on our original opinion.

On application for rehearing.
En Banc. Rehearing denied.
FRUGE, and HOOD, JJ., are of the opinion that a rehearing should be granted.