CHEHARDY, Judge.
Plaintiff, Geraldine Scolaro Abbott, filed this suit for an accounting of community property revenues, and traversing the corporate management of her former husband, John W. Abbott. Following trial, judgment was rendered in favor of Mr. Abbott approving the accounting and disbursement, ordering the parties to maintain the sum of $8,000 by equal contributions in the bank account for the operation of jointly held properties, and providing that any sums in such account in excess of $15,000 were to be equally divided between the parties.
Plaintiff has appealed.
The record reflects the parties were judicially separated on November 2, 1981 and at that time they entered into a settlement of community and compromise agreement. Under the terms of the agreement plaintiff and defendant were recognized as co-owners in indivisión of various items of very substantial community property consisting of notes, a fourplex, two residences, a tour company (Abbott Tours, Inc.), for which defendant paid plaintiff $220,000 for her one-half interest, and a commercial building known as the Abbott Building.
After much litigation, most of their problems were resolved, with the exception of property involved here, the Abbott Building, which continued to be co-owned from November 2, 1981 through November 30, 1982 (the accounting period).
During the accounting period defendant managed the property. Initially joint checking accounts were established into which Mr. Abbott deposited all rents and revenues, and wrote disbursement checks which required the signature of both parties.
This arrangement was unsatisfactory, apparently because plaintiff refused to sign checks for various expenses defendant considered necessary. He then filed a rule to show cause why plaintiff should not be required to sign the checks. (Plaintiff excepted that such action was not proper under summary proceedings. Defendant dismissed the rule and then opened a bank account for the benefit of plaintiff and defendant on which .only he signed the checks. He sent copies of deposit slips, bank statements, etc., to plaintiff.)
Plaintiff was dissatisfied with this arrangement and wanted the management turned over to a third party, a local real estate firm. The defendant objected because the real estate firm contract also included a listing agreement whereby it would receive a percentage of the purchase price on any sale of the building, and also provided it was to receive a surcharge on any necessary repairs.
Defendant could see no savings of time or money by using a third-party agent and was not agreeable to the terms proposed, so he continued to manage the business (Abbott Tours, Inc.) and the property (the Abbott Building) keeping invoices and can-celled checks for each supplier or serviceman who rendered services or supplies for the building.
This appeal is concerned with approximately $40,000 in payments made out of joint funds for maintenance of their joint property. Approximately $20,000 of that total represents money paid for a new air-conditioning system for the building and the remaining disbursements challenged represent janitorial services and miscellaneous expenses.
Plaintiff submits six categories of error in the trial court judgment and makes the following claims as her share with respect to each:
*1030 DESCRIPTION CLAIM
1. Janitorial expenses $ 7,140.27
2. Legal fees 768.45
3. Mortgage account 301.78
4. Repairs by the Theil brothers 504.48
5. Flettrich Engineering (air-conditioning repairs) 10,605.47
6. Miscellaneous 530.79
[[Image here]]
Total $19,851.24
Most of the disbursements involve expenses incurred in connection with the Abbott Building, a five-story office building containing 4,500 square feet per floor, purchased by the parties in 1977.
Plaintiff challenges all disbursements for janitorial services for the Abbott Building. She contends that Abbott Tours, Inc., defendant’s corporation, is responsible for these charges.
The evidence establishes that Abbott Tours occupies one floor of the five-story Abbott Building and pays $2,000 per month rent. Plaintiff claims payment for janitorial services for the entire building was part of Abbott Tours’ responsibility, in addition to the rent.
When the parties first acquired the building they hired a janitorial service company to perform these duties. They later found it more economical to discharge the service company and hire their own janitors.
Defendant contends such expenses were never the responsibility of Abbott Tours, but Abbott Tours paid these expenses as a convenience to the parties at a time the corporation was jointly owned by plaintiff and defendant. At that time it made no difference whether they paid the janitorial services themselves or had the corporation pay such expenses.
Abbott Tours maintained payroll records and had computer processing facilities for employees, while plaintiff and defendant as individuals did not. For this reason it was easier and more efficient to handle the janitorial personnel through Abbott Tours than for the parties to do it for themselves. Defendant began reimbursing Abbott Tours for janitorial expenses for the Abbott Building after November 2, 1981, the date defendant purchased plaintiff’s interest in Abbott Tours.
The trial court received all of the building leases and activities of the parties regarding the janitorial expenses and concluded that while Abbott Tours’ rent was below the present market value for office space, it was not grounds for objection if it was the rate agreed upon between the parties.
The court also noted it was not the lowest rent in the building, thus corroborating defendant’s contention the $2,000 figure was agreed upon at that time. It also noted the parties paid the janitorial expenses out of their undivided funds until they hired their own janitorial employees, thus supporting defendant’s position that the only reason for a change in procedure was for the convenience of the parties.
The court found the parties did agree to the rental rate of $2,000 for Abbott Tours and that it paid, and continues to pay, janitorial expenses solely as agent for the parties and is entitled, and will be entitled, to be reimbursed for these sums.
We agree with that conclusion.
Plaintiff complains of legal fees paid by defendant in the sum of $1,536.90 to Kenneth J. Berke. Prior to the separation and settlement of community property agreements Mr. Berke was the personal attorney of both parties as well as their attorney for business interests. Plaintiff contends that during the accounting period Mr. Berke was acting solely in the interest of defendant and that she received no benefit from these services.
However, defendant claims that to manage the jointly owned property it was necessary to enter into leases, collect delinquent rents and dispose of tenant controversies. Mr. Berke had performed legal services in connection with the property since its purchase and was familiar with the services required. The servicés were rendered over a 13-month period and counsel identified each invoice and described the services rendered.
The trial court found plaintiff benefited from these services and approved the payment as altogether proper. We agree.
*1031 Plaintiff claims she is entitled to an additional award of $263.57 plus $38.21 interest from a mortgage account. At the time the parties settled the community they were not sure how much money there was in this account, but that it was approximately $10,000. Both parties were represented by counsel at the time of the settlement and plaintiff accepted a cheek for $5,000 in settlement of this account. It was later established that the account actually contained $10,527.14.
The defendant entered into evidence the check payable to plaintiff and endorsed by her bearing the notation “includes settlement of mtg. acct.”
The trial court found from the evidence that the parties chose to stipulate the $10,000 figure at the time of the settlement and that the court could not allow the parties to withdraw from the settlement agreed upon. There being no evidence of fraud, it found the settlement agreement binding on the parties. We find no error in this conclusion.
Plaintiff objects to all payments for maintenance work performed by the Theil brothers, identifying them as friends of the defendant. They were paid $1,008.96 over a period of 13 months for services rendered. These men had performed maintenance service for both plaintiff and defendant for years.
At the trial Terrance Theil identified every itemized receipt and payment for work which he described: painting a fire escape, painting various offices, and hauling away trash. There was no evidence that any invoice was in error, fraudulent or otherwise improper. These payments were properly approved.
Plaintiff claims she is entitled to one-half of the $21,210.93 defendant paid to Flett-rich Heating and Air Conditioning Corporation on the ground that these expenses were too high. This is the same company plaintiff used for heating and air-conditioning problems arising in the Abbott Building when she was • in charge of its management.
The evidence established that the air-conditioning system in the Abbott Building was 20 to 25 years old and in need of extensive repairs. Defendant testified he used Flettrich because their service was prompt, they are a highly reputable air-conditioning and heating service, and are very responsive to the needs of the Abbott Building. They come promptly, do a good job, and correct the problems quickly. Because of the age of the system and considering the size of the building, it is clear the judge did not find the charges excessive.
Representatives, of Flettrich identified each invoice describing the work performed. The trial court found both parties received the benefit of these services and approved payment. His finding is clearly supported by the record.
Plaintiff challenges miscellaneous expenses, claiming she is entitled to her half of these expenditures amounting to $530.79. She complains of two $25 Christmas presents given to people who served the parties for years and to whom similar gifts had been given in the past.
She questions the expense of changing elevator keys but concedes that the parties had always paid for such security measures in the past.
Plaintiff challenges the furnishing of a refrigerator at a cost of $150 to a tenant to replace an existing unit which had ceased to function. The court was satisfied that under the lease the parties were obligated to provide a working unit.
We are impressed, as was the trial court, by the completeness and accuracy of defendant’s records. He entered into evidence all of the bank statements and can-celled checks in payment of expenses, and attached to each the invoices for which they were paid.
He entered into evidence exhibits itemizing income and expenses during the accounting period, November 2, 1981 through November 30, 1982. These exhibits itemize income as to the date it was received, the *1032 source of the item, a description of what it represented, the date it was deposited in the bank accounts, and the amount of the deposit in which it was included.
As to expenses, the exhibit showed the date each check was written, the person to whom payment was made, a description of the expense and the check number. The evidence fully substantiated the payments made in every respect.
Furthermore every witness who testified concerning the invoices corroborated the correctness of defendant’s accounting and described the work performed.
Plaintiff, on the other hand, failed to show any error or discrepancies between the facts and figures. The trial court was therefore correct in approving the accounting submitted by defendant as being complete and adequate.
Thus, for the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.